# Illinois Official Reports

## Appellate Court

*People v. Alexander*, 2014 IL App (4th) 130132

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALVIN A. ALEXANDER, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-13-0132 |
| Filed | December 17, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court's dismissal of defendant's appeal from the trial court's *sua sponte* dismissal of his petition pursuant to section 2-1401 of the Code of Civil Procedure seeking relief from his convictions for three first degree murders committed during an armed robbery as frivolous was affirmed where the State did not challenge defendant's failure to properly serve the State but, rather, the State argued the petition was frivolous and did not state any basis for relief under section 2-1401, and the appellate court, agreeing that the petition was frivolous, also found that defendant's continued filing of such frivolous or procedurally barred claims resulted in the expenditure of scarce judicial resources, thereby requiring the appellate court to order that defendant show cause within 30 days why sanctions should not be imposed under Supreme Court Rule 375(b) against defendant for filing a frivolous appeal; and until defendant responds to that order, and the appellate court determines what action to take, the clerk of the court was directed not to file any new appeals submitted by defendant to this appellate court. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 91-CF-480; the Hon. Rebecca Simmons Foley, Judge, presiding. |

| Judgment | Affirmed; cause remanded with directions. |
|---|---|

| Counsel on Appeal | Michael J. Pelletier, of State Appellate Defender's Office, of Springfield, and Peter A. Carusona and Sean Conley, both of State Appellate Defender's Office, of Ottawa, for appellant. |
|---|---|
| | Jason Chambers, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and Luke McNeill, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion. Presiding Justice Pope and Justice Turner concurred in the judgment and opinion. |
|---|---|

**OPINION**

¶ 1   In December 2012, defendant, Alvin A. Alexander, *pro se* filed a document entitled "Leave To File Petition for Relief From Judgment" under section 2-1401(f) of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-1401(f) (West 2012)). At the time of his filing, defendant was serving concurrent sentences of (1) natural life for the October 1998 first degree murder of three people and (2) 50 years for armed robbery (Ill. Rev. Stat. 1987, ch. 38, ¶¶ 9-1(a)(1), 18-2(a)). In January 2013, the trial court *sua sponte* denied defendant's petition, finding that it was frivolous as defined by section 22-105 of the Civil Code (735 ILCS 5/22-105 (West 2012)).

¶ 2   Defendant appeals, urging this court to vacate the trial court's *sua sponte* denial of his December 2012 petition for relief from judgment. Specifically, defendant argues that because he did not properly serve the State as required by Illinois Supreme Court Rule 105 (eff. Jan. 1, 1989), his petition was not ripe for adjudication. For the reasons that follow, we affirm and remand with directions.

¶ 3                                    I. BACKGROUND
¶ 4                            A. Defendant's Underlying Convictions
¶ 5   In July 1991, the State charged defendant with (1) three counts of first degree murder, (2) three counts of first degree murder based on the felony-murder doctrine, and (3) armed robbery (Ill. Rev. Stat. 1987, ch. 38, ¶¶ 9-1(a)(1), (a)(3), 18-2(a)). Specifically, the State alleged that on

October 27, 1988, defendant shot and killed Scott A. Burton, Robert J. Webb, and Whitney L. Cole during the commission of an armed robbery.

¶ 6 At defendant's July 1992 jury trial, Tracey Gault testified that on October 27, 1988, she was working as a cashier at the S&S Liquor Store in Bloomington, Illinois, when she saw two men enter. As Gault began her preparations to close the store, she noticed the two men moving toward two other customers–later identified as Burton and Cole. Shortly thereafter, Gault saw the two men, Burton, and Cole walk down the main aisle of the store. Although Gault opined that Cole looked upset, she did not notice any interaction among them. Gault's coworker, Webb, then approached the group, who were now located between the cash register and the shelves that formed the main aisle. At that moment, Gault noticed that one of the men possessed a handgun.

¶ 7 Both men ordered Gault, Webb, Burton, and Cole down on the floor. The taller man fired his handgun, which Gault considered a warning to follow their instructions. Both men then ordered Gault to open her cash register. After she complied, the shorter man–whom Gault identified as defendant–took the money from the register. Gault returned to the floor. Defendant then searched Cole's purse. Finding nothing of value, defendant and his accomplice–later identified as Glenn H. Wilson–stated, "Get the safe." Although their words were not directed at her, Gault got up and walked back to the safe, accompanied by defendant.

¶ 8 Gault bent down, reached into the safe, and handed wrapped stacks of money to defendant, who stood directly behind her. Gault then turned toward defendant and asked if he wanted the change in the safe. Defendant responded, "Hell no. What are you looking at, bitch?" Defendant then struck Gault with his handgun, causing her to fall back into a corner as her glasses hit the ground. Gault–now bleeding from the bridge of her nose–faced away from defendant. At that moment, Gault heard three shots. Afterward, Gault stated that everything "got quiet." About 20 seconds later, Gault crawled on her hands and knees and whispered, "You guys, you guys," attempting to determine whether Webb, Burton, and Cole were still in the store. When nobody answered, Gault looked around the corner and saw blood coming out of Cole's mouth. Gault retreated and called 9-1-1.

¶ 9 The remaining pertinent testimony showed that when police arrived at the store, Webb, Burton, and Cole were lying on their stomachs with "their hands up to their heads." Burton died at the store but Webb and Cole–who were still breathing when police arrived–were transported to a hospital, where they died. Pathologists later determined that Webb, Burton, and Cole each died of a single gunshot wound to the head.

¶ 10 The jury, after convicting defendant of all counts, determined that he was eligible for the death penalty as then authorized by Illinois law. However, following another hearing conducted shortly thereafter, the jury found sufficient mitigating factors to preclude the death penalty. Immediately after the jury's finding, the trial court imposed the following sentences: (1) natural life for each first-degree-murder conviction; (2) 80 years for each felony-murder conviction; and (3) 50 years for armed robbery, to be served concurrently.

¶ 11 B. Defendant's Filings Subsequent to His Incarceration

¶ 12 Defendant appealed his conviction and sentence, challenging (1) Gault's out-of-court and in-court identifications, (2) the trial court's admission of a black leather jacket, (3) the sufficiency of the evidence presented to convict him, and (4) his felony-murder convictions

because they were based on the same physical act as his first-degree-murder convictions. This court affirmed but vacated defendant's felony-murder convictions. *People v. Alexander*, No. 4-92-0877 (June 24, 1994) (unpublished order under Supreme Court Rule 23).

¶ 13    In May 1993, defendant *pro se* filed his first petition for relief under the Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 to 122-8 (West 1992)), alleging that his trial counsel was incompetent. In January 1995, defendant's appointed counsel filed a second amended postconviction petition, alleging that (1) defendant's sixth-amendment right to confront witnesses against him (U.S. Const., amend. VI) was violated when the State presented evidence of out-of-court statements made by Wilson and (2) defendant received ineffective assistance of trial and appellate counsel. Following a February 1995 hearing, the trial court denied defendant's petition.

¶ 14    Defendant appealed, and this court affirmed, concluding, in pertinent part, that defendant failed to demonstrate a confrontation-clause violation, specifically noting that Wilson's statements did not inculpate defendant. *People v. Alexander*, No. 4-95-0146, slip order at 7 (Dec. 18, 1996) (unpublished order under Supreme Court Rule 23).

¶ 15    In April 1997, defendant *pro se* filed a second postconviction petition, raising the same claims as in his first postconviction petition. In May 1997, the trial court dismissed defendant's petition as frivolous and patently without merit. Initially, defendant appealed the court's dismissal, but in August 1997, defendant abandoned his appeal.

¶ 16    In June 1997, defendant filed a petition for relief from judgment under section 2-1401 of the Civil Code, alleging that the State knowingly used false evidence to convict him. In July 1997, the trial court struck defendant's petition because defendant's case was still on appeal from the court's May 1997 dismissal of defendant's second postconviction petition.

¶ 17    In October 1997, defendant filed a petition for writ of *habeas corpus* pursuant to the Habeas Corpus Act (735 ILCS 5/10-101 to 10-137 (West 1996)), alleging that he was entitled to immediate release from prison because (1) he was innocent; (2) the State's indictment was tainted because African-Americans were excluded as grand jurors; (3) the appellate court, which affirmed his conviction, and the supreme court, which denied his petition for leave to appeal, were improperly constituted in that African-American and Hispanic jurists were underrepresented; (4) he was denied due-process when the State (a) knowingly used perjured testimony and (b) deliberately withheld impeachment evidence favorable to him; and (5) the trial court erroneously admitted into evidence a brown paper bag and a black leather jacket because the State failed to establish a continuous chain of custody. That same month, the court *sua sponte* denied defendant's writ of *habeas corpus*, finding that defendant's claims were meritless.

¶ 18    Defendant appealed, but the office of the State Appellate Defender (OSAD) later filed a motion to withdraw as appointed counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), alleging that defendant's appeal presented no meritorious issues. This court granted OSAD's motion to withdraw and affirmed the trial court's judgment, concluding that the allegations of defendant's petition, even if true, would not state a claim warranting the issuance of a writ of *habeas corpus*. *People v. Alexander*, No. 4-97-1038, slip order at 3-4 (Jan. 11, 1999) (unpublished order under Supreme Court Rule 23).

¶ 19    In February 1999, defendant *pro se* filed a third postconviction petition based on "new evidence," alleging that he was denied a fair trial because the State knowingly used perjured testimony to convict him. On August 3, 2001, defendant's appointed counsel filed an amended

third petition for postconviction relief, alleging that defendant was denied due process of law because (1) the State's indictment of defendant was procured, in part, through perjured testimony; (2) the State elicited false testimony regarding when police acquired possession of a black leather jacket; (3) the trial court admitted the aforementioned leather jacket without establishing a chain of custody; and (4) the State knowingly solicited perjured testimony at defendant's July 1992 trial. In addition, defendant argued that his sentence should be vacated or, in the alternative, reduced because the State's indictment did not indicate that defendant was eligible for the death penalty, life imprisonment, or an extended-term sentence. Three days later, defendant's appointed counsel also filed a motion for forensic deoxyribonucleic acid (DNA) testing pursuant to section 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-3 (West 2000)).

¶ 20 In July 2002, the State filed a motion to dismiss defendant's amended third petition for postconviction relief. Following a later hearing, the trial court granted the State's motion to dismiss, finding that (1) defendant's claims were raised or could have been raised in defendant's prior petitions or in his direct appeal and were therefore barred by the doctrine of *res judicata* and (2) the filing of the third petition was untimely and defendant stated no grounds that would satisfy his statutory burden of showing that the delay was not due to his own culpable negligence. In September 2002, the court denied defendant's motion for DNA testing.

¶ 21 Defendant appealed the trial court's denial of his motion for DNA testing, and this court affirmed, concluding that "DNA testing of the leather jacket [did] not have the potential to significantly advance defendant's claim of actual innocence and thus [was] not 'materially relevant' to his claim." *People v. Alexander*, No. 4-02-0778, slip order at 7 (Sept. 2, 2004) (unpublished order under Supreme Court Rule 23).

¶ 22 In March 2005, defendant *pro se* filed a petition for relief from judgment under section 2-1401 of the Civil Code, alleging that his convictions and sentences were unconstitutional and void because the State lacked the statutory authority to introduce Wilson's inculpatory statements at defendant's July 1992 trial and, as a result, defendant was denied the right to confront and cross-examine Wilson. In July 2005, the State filed a motion to dismiss defendant's petition for relief from judgment. In September 2005, the trial court denied defendant's petition, finding that it was not only untimely but also "completely without merit."

¶ 23 In October 2005, defendant *pro se* filed a fourth postconviction petition, again raising a confrontation-clause argument based on his challenge to the State's introduction of Wilson's allegedly inculpatory statements at his July 1992 trial. Later that month, the trial court sent defendant a letter, denying him leave to file a successive postconviction petition under section 122-1(f) of the Postconviction Act (725 ILCS 5/122-1(f) (West 2004)).

¶ 24 Defendant appealed the trial court's (1) September 2005 denial of his petition for relief from judgment and (2) October 2005 denial to file a successive postconviction petition under section 122-1(f) of the Postconviction Act. This court later consolidated defendant's appeals. In October 2006, OSAD filed a motion to withdraw as appointed counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), alleging that defendant's appeal presented no meritorious issues. This court granted OSAD's motion to withdraw and affirmed the court's judgment. In so doing, we concluded that in both cases, defendant's claims were barred by the doctrine of *res judicata*. *People v. Alexander*, Nos. 4-05-0897, 4-05-0960 cons., slip order at 6-7 (Mar. 26, 2007) (unpublished order under Supreme Court Rule 23).

¶ 25                                   C. The Issue on Appeal

¶ 26        The issue in this appeal–defendant's sixth appeal to this court–concerns defendant's *pro se*
document entitled "leave to file petition for relief from judgment" pursuant to section
2-1401(f) of the Civil Code, which defendant mailed to the McLean County circuit clerk on
December 17, 2012. In his petition, defendant alleged that his "fourth[-]amendment right to be
free from [an] unreasonable seizure was violated because his arrest was not supported by
probable cause." Defendant contended that absent certain untruthful testimony provided to a
July 1991 grand jury, the police would have lacked sufficient probable cause to arrest him.
Defendant asserted that this revelation entitled him to relief under section 2-1401(f) of the
Civil Code because "his arrest was invalid" and as a result, "it rendered void the personal
jurisdiction of the [trial court]."

¶ 27        Included with defendant's petition was a handwritten "Notice" addressed to Ronald
Dozier, McLean County State's Attorney. In that notice, which essentially reiterated the notice
language of Illinois Supreme Court Rule 105(a) (eff. Jan. 1, 1989), defendant wrote the
following:

>        "The pleading seeking new and additional relief against you has been filed and that
> a judgment by default may be taken against you for the new or additional relief unless
> you file[ ] an answer or otherwise file[ ] an appearance in the Office of the Clerk of the
> Court within 30 days after service, receipt by certified or registered mail, or the first
> publication of the notice, as the case may be, exclusive of the day of service, receipt, or
> first publication."

Defendant also signed an affidavit of service, certifying that on December 17, 2012, he served
a copy of his petition on each party by enclosing his filing in a sealed envelope and placing it in
a designated prison receptacle for delivery by the United States Postal Service.

¶ 28        On December 24, 2012, the circuit clerk filed defendant's petition, noting in a docket entry
dated that same day that a copy of defendant's filing was sent to the State, which included
defendant's "affidavit of service" and "proof/certification of service."

¶ 29        On January 30, 2013, the trial court *sua sponte* denied defendant's petition in a written
order, finding that it was frivolous as defined by section 22-105 of the Civil Code.

¶ 30        This appeal followed.


¶ 31                                        II. ANALYSIS

¶ 32        On appeal, defendant (now represented by OSAD) urges this court to vacate the trial
court's *sua sponte* denial of his December 2012 petition for relief from judgment, arguing that
because he did not properly serve the State as required by Rule 105, his petition was not ripe
for adjudication. We disagree.


¶ 33                 A. Petitions for Relief From Judgments Under Section 2-1401
                     of the Civil Code, Notice, and the Standard of Review

¶ 34        "Section 2-1401 allows for relief from final judgments more than 30 days after their entry,
provided the petition proves by a preponderance of evidence certain elements." *People v.
Laugharn*, 233 Ill. 2d 318, 322, 909 N.E.2d 802, 804-05 (2009). "[A] petition for relief from

judgment must be filed 'not later than [two] years after the entry of the order or judgment' sought to be vacated." *Price v. Philip Morris, Inc.*, No. 112067 (Ill. Sept. 30, 2011) (Garman, J., dissenting upon denial of pet. for leave to appeal) (quoting 735 ILCS 5/2-1401(c) (West 2008)). "Relief under section 2-1401 is predicated upon proof, by a preponderance of evidence, of a defense or claim that would have precluded entry of the judgment in the original action and diligence in both discovering the defense or claim and presenting the petition." *People v. Vincent*, 226 Ill. 2d 1, 7-8, 871 N.E.2d 17, 22 (2007).

¶ 35    Section 2-1401(b) provides that "[a]ll parties to the petition shall be notified as provided by rule." 735 ILCS 5/2-1401(b) (West 2012). Illinois Supreme Court Rule 106 states that notice of the filing of a petition under section 2-1401 of the Civil Code "shall be given by the same methods provided in Rule 105." Ill. S. Ct. R. 106 (eff. Aug. 1, 1985). Rule 105(b) provides that notice shall be directed to the party and must be served either by summons, by prepaid certified or registered mail, or by publication. Ill. S. Ct. R. 105(b) (eff. Jan. 1, 1989). "The notice must state that a judgment by default may be taken against the party unless he files an answer or otherwise files an appearance within 30 days after service." *People v. Nitz*, 2012 IL App (2d) 091165, ¶ 9, 971 N.E.2d 633 (citing Ill. S. Ct. R. 105(a) (eff. Jan. 1, 1989)).

¶ 36    A trial court's *sua sponte* denial of the relief sought in a section 2-1401 petition is the same as a dismissal with prejudice. *Vincent*, 226 Ill. 2d at 12, 871 N.E.2d at 25. We review *de novo* a trial court's denial of a petition brought under section 2-1401 of the Civil Code. *Laugharn*, 233 Ill. 2d at 322, 909 N.E.2d at 804; *Vincent*, 226 Ill. 2d at 13, 871 N.E.2d at 25-26.

¶ 37        B. The Trial Court's *Sua Sponte* Denial of Defendant's Section 2-1401 Petition
¶ 38            1. *The Supreme Court's Guidance on Section 2-1401 Petitions*
¶ 39    To place defendant's claim in its proper context, we begin our analysis with *Vincent*, in which the supreme court considered, in part, "whether a trial court may dispose of a properly served section 2-1401 petition without benefit of responsive pleadings." *Id.* at 5, 871 N.E.2d at 21. In rejecting the prisoner's argument as to that issue, the supreme court held that "the State's failure to answer the petition constituted an admission of all well-pleaded facts," which rendered the petition "ripe for adjudication." *Id.* at 9-10, 871 N.E.2d at 24.

¶ 40    Two years later, in *Laugharn*, 233 Ill. 2d at 323, 909 N.E.2d at 805, the supreme court considered the propriety of the trial court's *sua sponte* dismissal of a prisoner's section 2-1401 petition seven days after its filing with the court. The supreme court held that the court's dismissal of the prisoner's petition before the expiration of the 30-day period in which the State could answer or plead was premature, explaining that "[w]hile *Vincent* allows for *sua sponte* dismissals of section 2-1401 petitions, it did not authorize such action prior to the expiration of the 30-day period." *Id.* The supreme court in *Laugharn* concluded that (1) the prisoner's section 2-1401 petition was "not 'ripe for adjudication' " and (2) the "court's dismissal short-circuited the proceedings and deprived the State of the time it was entitled to answer or otherwise plead." *Id.*

¶ 41    Based on *Vincent* and *Laugharn*, the law in Illinois is settled that (1) a trial court may dismiss a section 2-1401 petition on its own motion without benefit of responsive pleadings (*Vincent*, 226 Ill. 2d at 9, 871 N.E.2d at 23) and (2) a court may not adjudicate a section 2-1401 petition prior to the 30-day period in which the respondent can answer or otherwise plead (*Laugharn*, 233 Ill. 2d at 323, 909 N.E.2d at 805). In both *Vincent* and *Laugharn*, service under

Rule 105 was not at issue. Defendant's claim in this case, however, presents a different scenario.

¶ 42                                    2. *Defendant's Section 2-1401 Claim*

¶ 43                                 a. Defendant's Underlying Rationale

¶ 44       As we have previously noted, defendant argues that because he did not properly serve the State as required by Rule 105, his petition was not ripe for adjudication. In his brief to this court, defendant acknowledges that he "executed the required 'default' notice directed at the State" and that "[t]he record also contains a proof of service directed at the clerk of the [trial] court." Despite these admissions, defendant contends that because he sent his petition by regular mail, he failed to comply with the provisions of Rule 105 regarding proper service of his notice by either (1) summons, (2) certified or registered mail, or (3) publication. Defendant then asserts that because service was improper, the 30-day period for the State to answer or otherwise plead did not even begin. Primarily relying on *Vincent* and *Laugharn*, defendant claims that the court's denial was premature because his petition was not yet ripe for adjudication. In his prayer for relief, defendant requests that this court vacate the trial court's order denying his section 2-1401 petition and "remand for further proceedings, *** specifically for the opportunity *** to properly serve the State." We decline to do so.

¶ 45       In this case, the sequence of events that prompted the trial court's denial occurred as follows. On December 17, 2012, defendant mailed his request for leave to file a section 2-1401 petition to the circuit clerk. On December 24, 2012, the circuit clerk filed defendant's petition on his behalf with the court. More than 30 days later, on January 30, 2013, the court denied defendant's claim, finding that it was frivolous as defined by section 22-105 of the Civil Code. At that time, the record showed (1) defendant's representations that he served a copy of his petition on the State by enclosing his filing in a sealed envelope and placing it in a designated prison receptacle for delivery by the United States Postal Service and (2) the circuit clerk's docket entry certifying that a copy of defendant's petition, which included defendant's notice, was sent to the State. *Vincent* held that the failure to respond to a section 2-1401 petition "constitutes an admission of all well-pleaded facts [citation], and the trial court may decide the case on the pleadings, affidavits, exhibits[,] and supporting material before it, including the record of the prior proceedings." *Vincent*, 226 Ill. 2d at 9, 871 N.E.2d at 23. The court's denial of defendant's petition occurred in this context.

¶ 46       The flaw in defendant's argument is that under *Laugharn*, the primary purpose of the 30-day period is to afford the State sufficient time to respond to a petitioner's claims seeking relief from judgment before a trial court may *sua sponte* consider the petition. *Laugharn*, 233 Ill. 2d at 323, 909 N.E.2d at 805. In other words, the court must allow the State time to make its position known. However, the 30-day period does not provide a sword for a petitioner to wield once a court–as in this case–does not find in his favor, especially given that, under defendant's interpretation, the basis of his claim on appeal is his *failure* to comply with Rule 105. If we were to accept defendant's rationale, a prisoner who uses regular mail to effect service upon the State will–upon appeal–be rewarded with a second bite of the apple if the court denies his petition on the merits. Indeed, no practical reason would exist to comply with the provisions of Rule 105 because to do so would foreclose that avenue of review, which effectively empowers a prisoner to persist in filing frivolous claims.

¶ 47   As we have previously noted, included with defendant's December 2012 petition for relief from judgment was a *handwritten* document, entitled "Notice," that substantially reiterated the language of Rule 105(a) regarding the consequences of not responding to a petition for relief from judgment within 30 days after service effected by either summons, certified or registered mail, or publication. This notice defendant sent out reveals his knowledge of the requirements of Rule 105, which he chose to disregard. Defendant now seeks to benefit by his failure, claiming that the trial court erred by denying his petition for relief from judgment *more than 30 days after the petition's filing* because he improperly effectuated service on the State by regular mail. We refuse to reward defendant for his knowing failure to comply with Rule 105. Defendant should not be able to serve a party incorrectly and then rely on the incorrect service to seek reversal.

¶ 48   We find support for our conclusion in a case that similarly rejected such arguments. See *People v. Kuhn*, 2014 IL App (3d) 130092, ¶¶ 13, 15, 16 N.E.3d 872 (rejecting the defendant's "unusual position of objecting to his failure to properly serve the State with notice of his section 2-1401 petition"; in that case, the trial court ruled more than 30 days after the defendant filed his petition, and the appellate court noted that the State claimed it had actual notice of the petition, which, as here, was sent by regular mail).

¶ 49   In *People v. Carter*, 2014 IL App (1st) 122613, ¶ 8, 8 N.E.3d 441, the appellate court considered the same issue now before us–that is, whether a prisoner's defective service of a section 2-1401 petition prevents a trial court from *sua sponte* considering the petition after 30 days have passed. In reversing the court's *sua sponte* dismissal and remanding for further proceedings, the appellate court concluded, as follows:

> "The State argues that in the interest of judicial economy we find that the State waived service and affirm the trial court. Judicial economy is best served when the prosecutor, in the first instance, affirmatively spreads of record whether the petition has been served and, if not, whether the State intends on waiving the required service. When this has been done, the trial court will be in a position to inquire whether the prosecution intends to file a response. Should the trial court then dismiss the petition, this potential appellate issue will be eliminated. Otherwise *** section 2-1401 defendants that use the same or similar method of service as used by the defendant in this case will routinely seek appellate review." *Id.* ¶ 24, 8 N.E.3d 441.

The appellate court in *Carter* reasoned that "[b]ecause *Laugharn* and *Vincent* demand that we base our determination as to whether the *** court prematurely *sua sponte* dismissed a section 2-1401 petition by looking at the date of service, it necessarily follows that proper dismissal, either with or without prejudice, cannot be achieved without service or an affirmative showing that proper service was waived by the [State]." *Id.* ¶ 25, 8 N.E.3d 441.

¶ 50   We decline to follow *Carter* because we disagree that the supreme court's decisions in *Laugharn* and *Vincent* mandate such a result. In this appeal, the State (1) does not contest the deficient service, (2) has taken the position that defendant's petition is frivolous (a position we agree with), and (3) has represented to this court that it will take the same position if the case is remanded to the trial court. Under these circumstances, we see no reason to remand the case so that (1) defendant can properly serve the State or the State can waive service, (2) the State can respond by repeating its position that defendant's petition is frivolous, and (3) the court can repeat its denial of defendant's petition.

¶ 51    We find support for our position in numerous cases in which the supreme court favors the efficient expenditure of judicial resources. See *Poindexter v. State*, 229 Ill. 2d 194, 207, 890 N.E.2d 410, 419 (2008) (requiring a petitioner to exhaust all administrative remedies before appealing, which may result in a conservation of judicial resources); *Gallagher v. Lenart*, 226 Ill. 2d 208, 239, 874 N.E.2d 43, 62 (2007) (requiring the existence of an explicit waiver of a compensation lien would mitigate settling parties' expending "time and money arguing over the interpretation of settlement provisions, and valuable judicial resources will be conserved"); *People v. Young*, 82 Ill. 2d 234, 247, 412 N.E.2d 501, 507 (1980) (declining to permit a trial court to test the veracity of the State certification under Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 1975) that a suppression order impairs the State's case because such oversight would not justify the expenditure of judicial resources necessary to make such a determination). In addition, such a mandate would be inconsistent with the well-established principle that a court "retain[s] a traditional right of discretionary control over its own docket." *Oldenstedt v. Marshall Erdman & Associates, Inc.*, 381 Ill. App. 3d 1, 15, 884 N.E.2d 830, 843 (2008).

¶ 52                    b. The Merits of Defendant's Section 2-1401 Claim

¶ 53    In his brief to this court, defendant does not address the propriety of the trial court's dismissal of his section 2-1401 petition. However, we review *de novo* a court's denial of a petition raised under section 2-1401 of the Civil Code (*Laugharn*, 233 Ill. 2d at 322, 909 N.E.2d at 804; *Vincent*, 226 Ill. 2d at 13, 871 N.E.2d at 25-26), which requires us to "consider[ ] anew the facts and law related to the case" (*Wiseman-Hughes Enterprises, Inc. v. Reger*, 248 Ill. App. 3d 854, 857, 617 N.E.2d 1310, 1312 (1993)). In so doing, we review "the trial court's judgment and not the reasons given for that judgment." *Nelson v. Aurora Equipment Co.*, 391 Ill. App. 3d 1036, 1044, 909 N.E.2d 931, 939 (2009).

¶ 54    In its brief to this court–as we have previously noted–the State posits that "[h]ad the State been properly served, it would have (1) refrained from filing any pleadings to a clearly frivolous petition as the record reflects currently[ ] or (2) filed a response arguing that indeed defendant's petition was frivolous and meritless." Given the State's stance and based on the record in this case, we conclude that the trial court correctly determined that the allegations contained within defendant's December 2012 section 2-1401 petition are frivolous and fail to state a cause of action for relief from judgment under section 2-1401 of the Civil Code. Accordingly, we affirm the court's judgment.

¶ 55                    C. Defendant's Abuse of the Court System

¶ 56    As the aforementioned history of this case clearly reveals, defendant is not content with his plight in life, which began over 22 years ago with his July 1992 convictions for his complicity in three brutal murders committed during an armed robbery. Since that time, defendant has made numerous claims under the Postconviction Act, Habeas Corpus Act, and Civil Code in the hope of raising any issue–however obscure, repeated, or futile–that would end or curtail his current incarceration. Those filings, which the trial court has consistently found either frivolous or procedurally barred, have undoubtedly caused the expenditures of scarce judicial resources.

¶ 57    We note that in its January 2013 order disposing of defendant's frivolous section 2-1401 claim, the court warned defendant that "any subsequent pleadings determined to be frivolous may be subject to the imposition of court costs and garnishment of the [d]efendant's Department of Corrections Trust Fund Account." Despite the commendable judicial restraint the trial court has shown thus far, we encourage the court to avail itself of section 22-105(a) of the Civil Code, which makes defendant financially responsible for his frivolous filings, if defendant disregards the court's warning and continues to file frivolous pleadings.

¶ 58    The instant appeal, which we have previously noted is defendant's sixth before this court, concerns the trial court's *sua sponte* denial of defendant's December 2012 document entitled "leave to file petition for relief from judgment" under section 2-1401(f) of the Civil Code, in which defendant essentially challenges the court's personal jurisdiction. As we have previously concluded, defendant's claim is without question frivolous, and he had no legitimate basis for appealing the court's *sua sponte* denial of his jurisdictional claim. The fact that OSAD–in demonstrating its usual competence and professionalism–raised a colorable argument on appeal regarding service of process was merely fortuitous. It is readily apparent that without some consequences for his repeated frivolous filings, defendant will continue to burden the trial and appellate courts.

¶ 59    Accordingly, we order defendant to show cause within 30 days why sanctions should not be entered against him under Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) for filing a frivolous appeal. Until such time as (1) defendant responds to this order and (2) this court determines what action to take, we direct the clerk of this court to disregard–and by that we mean to not file–any new appeals submitted to this court by defendant. See *Williams v. Commissary Department of the Department of Corrections*, 407 Ill. App. 3d 1135, 1138, 948 N.E.2d 1061, 1063 (2011).

¶ 60                                III. EPILOGUE

¶ 61    As noted earlier, defendant argues that the trial court's *sua sponte* denial of his section 2-1401 petition was premature, given that the State was never properly served by him because service cannot be effectuated by "regular mail" under Rule 105. This precise argument has been made repeatedly over the last few years by other defendants who similarly complained about trial courts' *sua sponte* dismissals after the 30-day period has expired under circumstances where *they* have failed to properly serve the State under Rule 105. A *partial* list of such cases follows: *Carter*, 2014 IL App (1st) 122613, 8 N.E.3d 441; *People v. Ocon*, 2014 IL App (1st) 120912, 7 N.E.3d 42; *People v. Matthews*, 2014 IL App (1st) 121913-U; *People v. Hible*, 2013 IL App (4th) 120171-U; *People v. Miller*, 2012 IL App (5th) 110201, 981 N.E.2d 528; *People v. Marcrum*, 2013 IL App (4th) 120154-U; *Oliver v. Pfister*, 2013 IL App (4th) 120885-U; *Rynders v. Dawson*, 2012 IL App (4th) 120830-U; *Nitz*, 2012 IL App (2d) 091165, 971 N.E.2d 633; *People v. Nash*, 2013 IL App (1st) 112795-U; *Kuhn*, 2014 IL App (3d) 130092, 16 N.E.3d 872; and *People v. Prado*, 2012 IL App (2d) 110767, 979 N.E.2d 564.

¶ 62    The above list represents an astonishing and embarrassing squandering of scarce judicial resources. We use the term "embarrassing" advisedly because accepting defendant's argument essentially renders the judiciary defenseless against "frequent-flyer litigators" like defendant, who, with nothing but time on their hands, can continue to bombard trial courts with frivolous litigation, ostensibly brought pursuant to section 2-1401. Then, when they fail to comply with Rule 105's technical service requirements, they complain to the appellate courts about the trial

courts' *sua sponte* dismissals, demanding that their utterly groundless claims be remanded back to the trial court for further proceedings in which everyone involved–including the defendants filing the groundless pleadings–knows to a certainty that no relief will be forthcoming.

¶ 63 Surely, the judiciary cannot permit this situation to continue. Doing so simply empowers defendants like the one now before us, who is unhappy with his lot in life–sitting in prison merely because of his complicity in the execution of three innocent people–to continue to "attack the system" with groundless claims, thereby requiring the courts to squander their scarce resources. Indeed, we surmise that forcing the courts to do so is likely defendant's key motivation. "Ensuring open and meaningful access to the courts means denying access to those who are intent on disrupting the judicial process." *People v. Austin*, 2014 IL App (4th) 140408, ¶ 27.

¶ 64                                   IV. CONCLUSION
¶ 65 For the reasons stated, we affirm the trial court's judgment and remand with directions.

¶ 66 Affirmed; cause remanded with directions.