NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 210140-UB

NO. 4-21-0140

IN THE APPELLATE COURT

FILED
October 19, 2022
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| GREGORY L. BOATMAN, | ) | No. 97CF1076 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Knecht and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court granted appointed counsel's motion to withdraw and affirmed
       the judgment of the trial court.

¶ 2    On March 3, 2021, defendant, Gregory L. Boatman, appealed the dismissal of his

petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure

(Code) (735 ILCS 5/2-1401 (West 2018)). The Office of the State Appellate Defender (OSAD)

was appointed to represent defendant. OSAD subsequently moved to withdraw on the basis that

this court lacked jurisdiction and on the alternative basis that it could not raise any meritorious

argument on appeal. On November 15, 2021, we entered an order allowing OSAD to withdraw

and dismissing the appeal for lack of jurisdiction on the basis that defendant's notice of appeal

was not timely filed. *People v. Boatman*, 2021 IL App (4th) 210140-U.

¶ 3       Thereafter, defendant, *pro se*, filed a petition for leave to appeal in the supreme court. On March 30, 2022, the supreme court entered a supervisory order denying defendant's petition for leave to appeal and vacating our prior order. *People v. Boatman*, No. 128022 (Ill. Mar. 30, 2022) (supervisory order). The supreme court directed us to treat the notice of appeal defendant filed in the trial court as a properly perfected appeal from the trial court's order dismissing his section 2-1401 petition. *Id.*

¶ 4       On remand, OSAD was reappointed to represent defendant. OSAD now seeks to withdraw pursuant to Illinois law on the basis that it cannot raise any potentially meritorious argument on appeal. We allow OSAD's motion to withdraw, affirm the judgment of the trial court, and order defendant to show cause within 30 days as to why sanctions should not be entered pursuant to Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994).

¶ 5                                    I. BACKGROUND

¶ 6       In 1997, defendant was charged with two counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(1) (West 1996)) for acts committed against B.M. Defendant was also charged with two counts of attempted first degree murder of a peace officer (*id.* §§ 8-4(a), 9-1(a)(1)), aggravated battery with a firearm (*id.* § 12-4.2(a)(2)), and unlawful possession of a stolen vehicle (625 ILCS 5/4-103(a)(1) (West 1996)).

¶ 7       On December 1, 1997, the State filed a motion *in limine* seeking to bar the defense from eliciting evidence of B.M.'s prior sexual activity with individuals other than defendant, including her prior convictions for prostitution and any past or present acts of prostitution. Defense counsel argued that the defense should be permitted to impeach B.M.'s credibility with her prior convictions for prostitution. The trial court granted the motion in its entirety.

¶ 8        The matter proceeded to a jury trial. After B.M.'s testimony, juror Patricia Walker sent a note to the trial court stating: "I do not know the witness but I do know her father." The handwritten note appears in the common law record. In the presence of the parties but outside the presence of the other jurors, the court questioned Walker extensively about the note and her relationship with B.M.'s father. After discussing the matter with the parties off the record, the court told Walker it was confident she could be fair and impartial. The court directed Walker to return to the jury room and not to discuss the matter with the other jurors. The trial resumed.

¶ 9        At the conclusion of the trial, the jury found defendant guilty of attempted first degree murder of a peace officer, two counts of aggravated criminal sexual assault, and unlawful possession of a stolen vehicle. Defendant filed a motion for a new trial arguing, *inter alia*, that the court erred in granting the State's motion *in limine* and thereby prohibiting the defense from cross-examining B.M. about her prior convictions for prostitution, which unduly restricted the defense's ability to effectively attack her credibility. The trial court denied the motion.

¶ 10        On January 30, 1998, the trial court imposed concurrent sentences of 14 years' imprisonment for unlawful possession of a stolen vehicle and 160 years' imprisonment for attempted first degree murder of a peace officer. The court also imposed sentences of 60 years' imprisonment for each of the two aggravated sexual assault convictions. One of the 60-year sentences was ordered to run concurrently with the sentences for the other offenses, and the second was to run consecutively.

¶ 11        On direct appeal, this court reduced defendant's sentence for attempted first degree murder of a peace officer to 60 years' imprisonment but otherwise affirmed the judgment of the trial court. *People v. Boatman*, 312 Ill. App. 3d 340, 345 (2000).

¶ 12        Thereafter, defendant filed multiple collateral proceedings, some of which we discuss here. On October 25, 1999, defendant filed a *pro se* postconviction petition alleging, *inter alia*, that his counsel on direct appeal provided ineffective assistance for failing to argue defendant's due process rights were violated in that Walker "was prejudiced against him since she knew a witness's relative." The trial court dismissed the petition as being frivolous and patently without merit, and the appellate court affirmed the summary dismissal. *People v. Boatman*, No. 4-00-0114 (2001) (unpublished order under Illinois Supreme Court Rule 23).

¶ 13        On April 3, 2006, defendant filed his first petition for relief from judgment pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2006)), which was denied.

¶ 14        On August 14, 2009, defendant, through counsel, filed a "Post-Conviction Petition for Forensic Testing on Evidence Not Subjected to Testing at the Time of Trial, Pursuant to 725 ILCS 5/116-3." The trial court entered agreed orders for forensic testing of several items. After the forensic testing was completed, defense counsel indicated he was unable to file further pleadings based on the results of the testing, and the court permitted counsel to withdraw.

¶ 15        On October 11, 2011, defendant, *pro se*, filed a document titled "A Challenge to the Chain of Custody, in the Absence of Actual Evidence of Tampering, Substitution, or Contamination for Forensic Testing on Evidence not Subjected to Testing at the Time of Trial, Pursuant to 725 ILCS 5/116-3." In this pleading, defendant argued B.M.'s sexual assault examination was "tamper[e]d with and substituted" when Officer Kristy Miller broke the integrity of the seal outside the presence of defense counsel. Defendant requested that the court order a "thorough investigation" into whether evidence had been tampered with or substituted.

¶ 16        Included with this pleading was a copy of Officer James Clark's police report dated July 24, 2009. In the report, Clark asserted that Assistant State's Attorney Joel Fletcher

asked him to meet with Fletcher and defense counsel to inspect B.M.'s sexual assault kit. The report stated Fletcher had previously asked Officer Kristy Miller to open the kit to see if there was an inventory in it, and she advised him there was not. Clark retrieved the sexual assault kit and "observed that the integrity seal had been broken and the package was resealed by Officer Kristy Miller on July 16, 2009."

¶ 17 The trial court dismissed defendant's *pro se* pleading, finding defendant had already been granted all the relief to which he was entitled under section 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-3 (West 2008)) and that the statute did not allow for the inquiry sought by defendant.

¶ 18 On March 4, 2013, defendant filed a second petition for relief from judgment pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2012)), which asserted his due process rights were violated when Miller tampered with the sexual assault kit. Defendant set forth substantially the same tampering claim he raised in his earlier filing, and he submitted a copy of the police report dated July 24, 2009, that he had submitted with his prior pleading.

¶ 19 The trial court dismissed the second section 2-1401 petition, finding it was not supported by affidavits from individuals with firsthand knowledge and was based on "rank speculation." The court also found that because the petition was based on acts that allegedly occurred after 2009, it could not be a basis for relief from the original judgment.

¶ 20 On June 4, 2018, defendant, *pro se*, filed his third petition for relief from judgment pursuant to section 2-1401 of the Code, which is the subject of the instant appeal. In the petition, defendant requested that the trial court vacate his convictions due to newly discovered evidence that had allegedly been fraudulently concealed from him. Specifically, defendant alleged the defense had been precluded from eliciting evidence at trial of the victim's

sexual activity with individuals other than defendant. Defendant stated the victim had been jailed on prostitution charges at the time she testified during his trial. Defendant also alleged an unnamed juror knew the father of one of the State's witnesses and wrote a letter to the judge, but the other jurors were not informed of this fact. Defendant further alleged an unnamed police sergeant stated the prosecutor "had an officer to tamper with the (Rape Kit)." Defendant attached to his petition the 1997 motion *in limine* to bar the defense from eliciting evidence about B.M.'s prior sexual activity; Clark's police report dated July 24, 2009; and the handwritten note appearing in the common law record stating, "I do not know the witness, but I do know her father." Defendant also submitted his own affidavit swearing the allegations contained in the petition were true.

¶ 21    The record indicates the State was served with a copy of the section 2-1401 petition, but it never filed a response.

¶ 22    On July 30, 2018, the trial court entered an order dismissing the section 2-1401 petition, finding defendant's claims identified no facts previously unknown or concealed from the trial court, defendant had not shown due diligence in bringing his petition, defendant had not shown why the current claims could not have been brought in a prior petition, and the petition was untimely. Defendant filed a notice of appeal over two years later. Pursuant to our supreme court's supervisory order, we treat defendant's notice of appeal as having properly perfected his appeal. See *Boatman*, No. 128022 (Ill. Mar. 30, 2022) (supervisory order).

¶ 23    As previously stated, OSAD was reappointed to represent defendant on remand and has moved to withdraw on the basis that it cannot raise any meritorious argument on appeal. Defendant has filed a response to OSAD's motion, requesting that we allow OSAD to withdraw

and permit him to proceed with his claims, which he argues are meritorious. The State has also filed an appellee brief, and defendant has filed a reply to the State's brief.

¶ 24                                    II. ANALYSIS

¶ 25        In its motion to withdraw, OSAD asserts it has considered challenging both the correctness of the trial court's ruling on the section 2-1401 petition and the procedure followed by the court but has concluded that neither challenge would possess legal merit. In his response, defendant contends that the trial erred in dismissing his section 2-1401 petition because the claims raised in the petition were meritorious. Upon examination of the record and after considering defendant's *pro se* response, we grant OSAD's motion and affirm the trial court's judgment.

¶ 26              A. Correctness of the Trial Court's Ruling

¶ 27        OSAD first asserts that it considered challenging the correctness of the trial court's ruling dismissing the section 2-401 petition but concluded that such an argument would lack legal merit. For the reasons that follow, we conclude that defendant failed to show that any of the claims asserted in his section 2-1401 petition were presented with due diligence and, accordingly, we agree with OSAD's conclusion.

¶ 28        "[S]ection 2-1401 of the Code represents a comprehensive statutory procedure authorizing a trial court to vacate or modify a final order or judgment in civil and criminal proceedings." *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. "[A] section 2-1401 petition is ordinarily used to bring facts to the attention of the trial court which, if known at the time of judgment, would have precluded its entry," but it may also be used to challenge a judgment for legal reasons. *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 94 (2006). Where, as in the instant case, a section 2-1401 petition presents a

fact-dependent challenge to a final judgment, "the petitioner must set forth specific *factual* allegations supporting each of the following elements: (1) the existence of a meritorious defense; (2) due diligence in presenting this defense; and (3) due diligence in filing the section 2-1401 petition for relief." (Emphasis in original.) *Warren County*, 2015 IL 117783, ¶ 51. Generally, a section 2-1401 petition must be filed no later than two years after the entry of the order or judgment being challenged. 735 ILCS 5/2-1401(c) (West 2018). However, this two-year period is tolled during the time the petitioner is under legal disability or duress or when the ground for relief is fraudulently concealed. *Id.*

¶ 29      "[W]hen a court enters either a judgment on the pleadings or a dismissal in a section 2-1401 proceeding, that order will be reviewed, on appeal, *de novo.*" *People v. Vincent*, 226 Ill. 2d 1, 18 (2007).

¶ 30                                    1. *Timeliness*

¶ 31      In the instant case, defendant filed his section 2-1401 petition 20 years after the entry of the judgment—long past the two-year time limitation set forth in section 2-1401(c) of the Code (735 ILCS 5/2-1401(c) (West 2018)). One of the trial court's reasons for dismissing the petition was untimeliness, and OSAD argues this was a proper basis for dismissal. We note, however, that "[t]he trial court *** may not dismiss a petition for relief from judgment, on its own motion, on the basis of timeliness." *People v. Malloy*, 374 Ill. App. 3d 820, 823 (2007). See also *People v. Cathey*, 2019 IL App (1st) 153118, ¶ 18.

¶ 32      Here, the trial court dismissed defendant's section 2-1401 petition *sua sponte* after the State failed to file a responsive pleading. Accordingly, timeliness—*i.e.*, the fact the petition was filed outside the statutory two-year time limitation—was not a proper basis for dismissal of the petition, and we do not affirm the trial court's judgment on this basis. However, the trial

court provided several other reasons supporting its *sua sponte* dismissal of the petition, and we find dismissal of the petition was proper on the basis defendant failed to show due diligence in bringing his claims.

¶ 33                                    2. *Victim's Prior Sexual Conduct*

¶ 34          In his section 2-1401 petition, defendant first claims the defense was barred from cross-examining B.M. concerning her prior sexual activity with anyone other than defendant or from eliciting other evidence of her prior sexual activity.

¶ 35          We find the trial court did not err in dismissing the section 2-1401 petition as to this claim because defendant failed to demonstrate that he exercised due diligence in presenting it. In support of the claim, defendant offered only the allegations in the petition, his own affidavit swearing they were true, the State's 1997 motion *in limine*, and generic citations to the "trial transcript." The motion *in limine* and contents of the trial transcript were obviously known to the court at the time of the entry of the original judgment. We find defendant did not act with due diligence in presenting claims based on these sources. To the extent defendant's allegations did not derive from the motion *in limine* or trial transcript, but from some other source, defendant has not indicated when or how he allegedly learned of these facts and why he failed to present them earlier.

¶ 36          Also, defendant's claim is barred by the doctrine of *res judicata*. Pursuant to the doctrine of *res judicata*, " ' "a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." ' " *People v. Stoecker*, 2020 IL 124807, ¶ 29 (quoting *People v. Creek*, 94 Ill. 2d 526, 533 (1983), quoting *People v. Kidd*, 398 Ill. 405, 408 (1947)). The issue defendant now seeks to

raise was previously litigated during the hearing on the State's motion *in limine* and in the proceedings on defendant's motion for a new trial. Thus, the claim is barred by *res judicata*.

¶ 37                    3. *Juror's Note*

¶ 38          Defendant also claimed in his section 2-1401 petition that an unnamed jury member sent a letter to the trial judge saying "she didn't know the state's witness but she knew her father" and that none of the other jurors were aware of this fact. In support of this claim, defendant attached a handwritten note stating: "I do not know the witness but I know her father."

¶ 39          Defendant has not shown due diligence in presenting this claim, as all the allegations set forth in the petition in support of this claim were known to the trial court at the time the judgment was entered. The handwritten note attached to the petition appears in the common law record. The trial transcript shows the note was written by Walker, she was questioned extensively about the note by the court in the presence of the parties, and the court ultimately concluded she could be a fair and impartial juror. Notably, the record shows defendant personally knew about the facts underlying this claim long before he filed the instant section 2-1401 petition in 2018, as he argued in his *pro se* postconviction petition filed in 1999 that appellate counsel was ineffective for failing to argue Walker was prejudiced against him. He attached the same handwritten note submitted with the instant petition to the 1999 petition.

¶ 40                    4. *Tampering with Evidence*

¶ 41          Finally, defendant claims in his petition that an unnamed police sergeant stated the prosecutor "had an officer to tamper with the (Rape Kit)." In support of this allegation, defendant submitted Officer Clark's report dated July 24, 2009.

¶ 42          The record shows defendant did not act with due diligence in presenting this claim in the instant petition, as he presented the same claim with more specificity in both a

pleading filed in 2011 and a prior section 2-1401 petition filed in 2013. He supported both of these prior pleadings with the same police report submitted with the instant petition, and the instant petition identifies no facts or evidence that were not already included in the prior pleadings. Moreover, defendant's claim is barred by the doctrine of *res judicata*, as the trial court dismissed his 2013 section 2-1401 petition asserting the same claim. See *Stoecker*, 2020 IL 124807, ¶ 29.

¶ 43                                    B. Trial Court's Procedure

¶ 44            OSAD indicates it considered challenging the procedure employed by the trial court in dismissing defendant's section 2-1401 petition but has concluded that such an argument would lack legal merit. We agree there was no error in the trial court's procedure.

¶ 45            If the opposing party has been served with notice that a section 2-1401 petition has been filed and fails to respond within 30 days, "any question as to the petition's sufficiency is deemed waived, and the petition is treated as properly stating a cause of action." *People v. Matthews*, 2016 IL 118114, ¶ 8. At that point, the trial court may dismiss a petition even in the absence of a responsive pleading if it is deficient as a matter of law. *Id.*

¶ 46            Here, the record shows the State was served with notice of the petition, and the trial court waited more than 30 days before dismissing it. As we have concluded that none of the claims advanced in the petition were meritorious, we find it was proper for the court to dismiss the petition on the basis that it was legally deficient. See *id.*

¶ 47                                    C. Sanctions

¶ 48            Since his conviction, defendant has filed numerous collateral proceedings, including two postconviction petitions, three section 2-1401 petitions, and multiple motions for forensic testing. Eventually, forensic testing was ordered, and the results yielded no exculpatory

- 11 -

evidence. Defendant's collateral claims have otherwise been found, both in the trial court and in this court, to lack merit. Defendant's repeated, frivolous filings are a burden on the court system, as they have "squandered judicial resources that could have been better spent addressing claims filed by good-faith litigants." *People v. Harper*, 2019 IL App (4th) 180160, ¶ 18.

¶ 49   Accordingly, we order defendant to show cause within 30 days why this court should not impose sanctions pursuant to Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994). Until (1) defendant responds to this order and (2) we have determined what action to take, we direct the clerk of this court not to file any new appeals submitted by defendant. See *People v. Alexander*, 2014 IL App (4th) 130132, ¶ 59.

¶ 50           III. CONCLUSION

¶ 51   For the reasons stated, we allow OSAD to withdraw, affirm the trial court's judgment, and order defendant to show cause within 30 days as to why sanctions should not be entered pursuant to Rule 375(b).

¶ 52   Affirmed.