2015 IL App (4th) 130223

NOS. 4-13-0223, 4-13-0617 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 26, 2015
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v.      (No. 4-13-0223) | ) | Livingston County |
| ROBERT V. DONLEY, | ) | No. 96CF169 |
| Defendant-Appellant. | ) | |
| _____ | ) | |
| | ) | |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| Plaintiff-Appellee, | ) | |
| v.      (No. 4-13-0617) | ) | Honorable |
| ROBERT V. DONLEY, | ) | Jennifer H. Bauknecht, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Presiding Justice Pope and Justice Harris concurred in the judgment and opinion.

**OPINION**

¶ 1        Following a May 1997 bench trial, the trial court found defendant, Robert V.

Donley, guilty of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 1996)) and later sen-

tenced him to 45 years in prison.  Defendant has since filed numerous pleadings unsuccessfully

challenging his conviction and sentence.  Two such pleadings are at issue in these appeals, which

this court has *sua sponte* consolidated.

¶ 2        In January 2013, defendant *pro se* filed a petition for relief from judgment under

section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)), challenging his

three-year mandatory-supervised-release (MSR) term.  In March 2013, the trial court *sua sponte*

dismissed defendant's petition with prejudice.

¶ 3        In June 2013, defendant *pro se* filed a second petition for relief from judgment, averring that "his conviction and sentence was obtained by fraud, ignorance, and deprivation of a defense."  Later that month, the trial court struck defendant's petition as untimely and "previously dismissed with prejudice."

¶ 4        Defendant appeals, urging this court to vacate the trial court's *sua sponte* rulings on his January and June 2013 petitions for relief from judgment.  Defendant contends that (1) because he did not properly serve the State as required by Illinois Supreme Court Rule 105 (eff. Jan. 1, 1989), his petitions were not ripe for adjudication; and (2) the court erred by striking his June 2013 petition prior to the 30-day minimum time limit imposed by the supreme court in *People v. Laugharn*, 233 Ill. 2d 318, 909 N.E.2d 802 (2009).  We disagree and affirm.

¶ 5                                I. BACKGROUND

¶ 6                          A. Defendant's Murder Conviction

¶ 7        The evidence presented at defendant's May 1997 bench trial showed that despite an order of protection that barred defendant from contacting his wife, Carol Donley, defendant, in November 1996, disabled the telephone line to Carol's residence, argued with her, broke a window, and entered her home.  Defendant then stabbed Carol 21 times with a knife, killing her.  Testimony provided by several witnesses, including Carol's 10-year-old son, identified defendant as the person outside of Carol's residence just before the murder who ran away immediately thereafter.  Defendant later surrendered to police and provided a videotaped statement admitting his culpability.  Deoxyribonucleic acid (DNA) testing revealed that blood police recovered from defendant's person matched Carol's DNA profile.  Various items of physical evidence also supported the State's case.

¶ 8        Defendant testified that he arrived at his wife's home hoping to resolve their dif-

ferences and did not plan the events that ensued. Defendant stated that the circumstances sur-rounding the argument he had with his wife provoked him and he reacted in anger. Defendant's counsel argued that the stabbing had been an act of rage.

¶ 9    The trial court found defendant guilty of first degree murder, noting that it could not "imagine a more conclusive case where the evidence is so overwhelming as to a defendant's guilt." The court later sentenced defendant to 45 years in prison.

¶ 10    B. Defendant's Filings Subsequent to His Incarceration

¶ 11    Defendant appealed, and this court affirmed his conviction and sentence but re-manded with directions that the trial court (1) correct defendant's sentencing order and (2) award 235 days' credit toward defendant's sentence for time served. *People v. Donley*, No. 4-97-0564 (May 14, 1999) (unpublished order under Supreme Court Rule 23).

¶ 12    In November 1998, defendant *pro se* filed his first petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 to 122-8 (West 1998)), which the trial court later dismissed as frivolous and patently without merit under section 122-2.1(a)(2) of the Act (725 ILCS 5/122-2.1(a)(2) (West 1998)). Defendant appealed, and this court concluded that de-fendant stated the gist of a constitutional claim when he alleged that the trial judge was asleep during part of his bench trial. *People v. Donley*, 314 Ill. App. 3d 671, 674, 731 N.E.2d 1260, 1263 (2000). We reversed and remanded for further proceedings, noting that "despite the strength of the State's case against defendant, an allegation that the trial judge was asleep during a portion of defendant's bench trial for first degree murder is sufficiently troubling that the matter should proceed to see what, if any, evidence defendant can muster in support of that claim at the second or (possibly) the third stage of proceedings under the Act." *Id.* at 674, 731 N.E.2d at 1263.

¶ 13        In March 2002, following remand, defendant's appointed postconviction counsel filed an amended postconviction petition. The State later filed a motion to dismiss defendant's amended postconviction petition. Following hearings in August 2002 and March 2003, the trial court granted the State's motion to dismiss. Defendant appealed, and this court affirmed. *People v. Donley*, No. 4-03-0436 (Dec. 23, 2004) (unpublished order under Supreme Court Rule 23). In March 2005, the Supreme Court of Illinois denied defendant's petition for leave to appeal. *People v. Donley*, 214 Ill. 2d 539, 830 N.E.2d 5 (2005) (table).

¶ 14        In June 2006, defendant *pro se* filed a successive postconviction petition under the Act, which the trial court dismissed upon finding that it was frivolous and patently without merit. Defendant filed a notice of appeal, and the court appointed the office of the State Appellate Defender (OSAD) to serve as his counsel. In March 2007, OSAD moved to withdraw as counsel, contending that defendant's appeal presented no meritorious issues. In April 2007, defendant filed additional points and authorities, opposing OSAD's motion to withdraw. This court declined to consider the merits of defendant's claim that the trial court erred by dismissing his June 2006 petition at the first stage of the postconviction proceedings because defendant failed to comply with section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2006)), in that he did not obtain leave of court before filing a successive postconviction petition. *People v. Donley*, No. 4-06-0623 (Dec. 14, 2007) (unpublished order under Supreme Court Rule 23). In so concluding, we granted OSAD's motion to withdraw and affirmed the court's judgment. *Id.*

¶ 15        We note that in addition to the two petitions at issue in this case, this court has recently considered and rejected two additional appeals, which were based on the trial court's denial of defendant's *pro se* (1) April 2013 motion for DNA testing (*People v. Donley*, No. 4-13-0531 (Mar. 11, 2015) (unpublished summary order under Supreme Court Rule 23(c)(2))) and (2)

September 2013 motion for leave to file a successive postconviction petition (*People v. Donley*, No. 4-14-0153 (Mar. 11, 2015) (unpublished summary order under Supreme Court Rule 23(c)(2))).  See *People v. Eubanks*, 283 Ill. App. 3d 12, 24, 669 N.E.2d 678, 686 (1996) (the appellate court may take judicial notice of its own records).

¶ 16                              C. The Petitions at Issue in This Appeal

¶ 17                    1. *Defendant's January 2013 Petition for Relief From Judgment*

¶ 18              On January 16, 2013, defendant *pro se* filed an amended petition for relief from judgment under section 2-1401 of the Code, challenging his three-year MSR term.  Included with defendant's petition was a notice of filing in which defendant certified that one day earlier he mailed the original and one copy of his petition to the Livingston County circuit clerk.

¶ 19              On March 14, 2013, the trial court entered the following order on defendant's January 2013 amended petition for relief from judgment:

> "The State has not filed a responsive pleading.  Therefore, all well pleaded facts in the petition are deemed admitted.  Initially, the court notes that defendant's [section] 2-1401 petition has not been timely filed, nor has defendant alleged any statutory basis for extending the two-year statute of limitations.  In fact, no affidavit is attached to the amended petition or the original petition.  Furthermore, the petition itself is insufficient as a matter of law[,] and therefore judgment on the pleadings in favor of plaintiff and against defendant is appropriate.  \*\*\*  [Defendant's] petition is dismissed with prejudice."

¶ 20                    2. *Defendant's June 2013 Petition for Relief From Judgment*

¶ 21    On June 6, 2013, defendant *pro se* filed a second petition for relief from judgment, averring that "his conviction and sentence was obtained by fraud, ignorance, and deprivation of a defense." Specifically, defendant contended that the trial court should vacate his conviction and sentence because (1) the grand jury that returned the true bill of indictment in this case was not properly convened; (2) his arrest was not followed by a "prompt preliminary hearing to establish probable cause"; (3) the police search of his person, home, and vehicle was unreasonable under the fourth amendment to the United States Constitution (U.S. Const., amend. IV); and (4) the State withheld "fraudulent" grand jury transcripts in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Defendant also alleged ineffective assistance of trial and appellate counsel in that each failed to argue or raise, respectively, his defective indictment.

¶ 22    Included with defendant's petition was a "proof of service and notice of filing," in which defendant certified that on June 4, 2013, he mailed, in pertinent part, his petition and a cover letter to the Livingston County circuit clerk. Defendant's handwritten cover letter notified the State that it had 30 days to "answer, respond, or otherwise [plead]."

¶ 23    On June 27, 2013—21 days after defendant filed his second petition for relief from judgment—the trial court struck defendant's petition as untimely and "previously dismissed with prejudice." The court then ordered the Livingston County circuit clerk to return, unfiled, any further pleadings from defendant unless he first obtains leave of the court.

¶ 24    This appeal followed.

¶ 25                    II. ANALYSIS

¶ 26    On appeal, defendant (now represented by OSAD) contends that (1) because he did not properly serve the State, as required by Rule 105, his January and June 2013 petitions for relief from judgment were not ripe for adjudication; and (2) the trial court erred by striking his

June 2013 petition for relief from judgment prior to the 30-day minimum time limit imposed by the supreme court in *Laugharn*. Defendant urges this court to vacate the trial court's *sua sponte* rulings on his petitions and remand for further proceedings. We decline to do so.

¶ 27        A. Petitions for Relief From Judgments Under Section 2-1401
of the Code, Notice, and the Standard of Review

¶ 28        "Section 2-1401 allows for relief from final judgments more than 30 days after their entry, provided the petition proves by a preponderance of evidence certain elements." *Laugharn*, 233 Ill. 2d at 322, 909 N.E.2d at 804-05. A petition for relief from judgment " 'must be filed not later than [two] years after the entry of the order or judgment.' " *Id*. at 322, 909 N.E.2d at 805 (quoting 735 ILCS 5/2-1401(c) (West 2004)). "Relief under section 2-1401 is predicated upon proof, by a preponderance of evidence, of a defense or claim that would have precluded entry of the judgment in the original action and diligence in both discovering the defense or claim and presenting the petition." *People v. Vincent*, 226 Ill. 2d 1, 7-8, 871 N.E.2d 17, 22 (2007).

¶ 29        Section 2-1401(b) provides that "[a]ll parties to the petition shall be notified as provided by rule." 735 ILCS 5/2-1401(b) (West 2012). Illinois Supreme Court Rule 106 (eff. Aug. 1, 1985) states that notice of the filing of a petition under section 2-1401 of the Code "shall be given by the same methods provided in Rule 105." Rule 105(b) provides that notice shall be directed to the party and must be served either by summons, by prepaid certified or registered mail, or by publication. Ill. S. Ct. R. 105(b) (eff. Jan. 1, 1989). "The notice must state that a judgment by default may be taken against the party unless he files an answer or otherwise files an appearance within 30 days after service." *People v. Nitz*, 2012 IL App (2d) 091165, ¶ 9, 971 N.E.2d 633 (citing Ill. S. Ct. R. 105(a) (eff. Jan. 1, 1989)).

¶ 30        A trial court's *sua sponte* dismissal with prejudice of a section 2-1401 petition is

the same as a denial of that petition. *Vincent*, 226 Ill. 2d at 12, 871 N.E.2d at 25. We review *de novo* a trial court's dismissal of a petition brought under section 2-1401 of the Code. *Laugharn*, 233 Ill. 2d at 322, 909 N.E.2d at 804.

¶ 31                                    B. Defendant's Improper Service Claim

¶ 32            Defendant asserts that the trial court erred by dismissing his January and June 2013 petitions for relief from judgment because he did not properly serve the State as required by Rule 105. Specifically, defendant claims that when he sent his petitions through the regular mail instead of providing the State notice by either (1) summons, (2) certified or registered mail, or (3) publication, he failed to comply with Rule 105. Given his failure, defendant posits that the 30-day period for the State to answer or otherwise plead did not begin. From that premise, defendant claims that the court's *sua sponte* dismissal was premature because his January and June 2013 petitions were not yet ripe for adjudication. We disagree.

¶ 33            In *People v. Alexander*, 2014 IL App (4th) 130132, ¶ 2, 23 N.E.3d 621, we considered the same argument defendant now raises. In *Alexander*, we first noted "the law in Illinois is settled that (1) a trial court may dismiss a section 2-1401 petition on its own motion without benefit of responsive pleadings (*Vincent*, 226 Ill. 2d at 9, 871 N.E.2d at 23) and (2) a court may not adjudicate a section 2-1401 petition prior to the 30-day period in which the respondent can answer or otherwise plead (*Laugharn*, 233 Ill. 2d at 323, 909 N.E.2d at 805)." *Id*. ¶ 41, 23 N.E.3d 621. In rejecting the defendant's argument that the court's denial of his section 2-1401 petition was premature because he did not properly serve the State, we concluded, as follows:

                "The flaw in defendant's argument is that under *Laugharn*,

                the primary purpose of the 30-day period is to afford the State

                suficient time to respond to a petitioner's claims seeking relief

from judgment before a trial court may *sua sponte* consider the petition. *Laugharn*, 233 Ill. 2d at 323, 909 N.E.2d at 805. In other words, the court must allow the State time to make its position known. However, the 30-day period does not provide a sword for a petitioner to wield once a court—as in this case—does not find in his favor, especially given that, under defendant's interpretation, the basis of his claim on appeal is his *failure* to comply with Rule 105. If we were to accept defendant's rationale, a prisoner who uses regular mail to effect service upon the State will—upon appeal—be rewarded with a second bite of the apple if the court denies his petition on the merits. Indeed, no practical reason would exist to comply with the provisions of Rule 105 because to do so would foreclose that avenue of review, which effectively empowers a prisoner to persist in filing frivolous claims." (Emphasis in original.) *Id.* ¶ 46, 23 N.E.3d 621.

¶ 34 We adhere to our conclusion in *Alexander* that a "[d]efendant should not be able to serve a party incorrectly and then rely on the incorrect service to seek reversal" of the trial court's decision. *Id.* ¶ 47, 23 N.E.3d 621.

¶ 35                              C. Defendant's Timing Claim

¶ 36 Defendant argues that the trial court erred by striking his June 2013 petition prior to the 30-day minimum time limit imposed by the supreme court in *Laugharn*. However, because we are addressing defendant's successive section 2-1401 petition, we disagree.

¶ 37 In *Laugharn*, 233 Ill. 2d at 323, 909 N.E.2d at 805, the supreme court considered

the propriety of the trial court's *sua sponte* dismissal of a prisoner's initial section 2-1401 petition seven days after its filing with the court. As we have previously noted, the supreme court held that the court's dismissal of the prisoner's petition before the expiration of the 30-day period in which the State could answer or plead was premature, explaining that "[w]hile *Vincent* allows for *sua sponte* dismissals of section 2-1401 petitions, it did not authorize such action prior to the expiration of the 30-day period." *Id.*

¶ 38        In support of the State's position that the trial court's dismissal was proper, the State cites the First District's decision in *Village of Glenview v. Buschelman*, 296 Ill. App. 3d 35, 693 N.E.2d 1242 (1998). In *Buschelman*, the defendants filed two section 2-1401 petitions, both of which the court denied. The defendants appealed the denial of only their second petition. *Id.* at 38, 693 N.E.2d at 1244. The plaintiff responded that the appellate court lacked jurisdiction to consider the defendants' appeal. *Id.* In agreeing with the plaintiff's jurisdictional claim, the First District provided the following analysis:

> "The issue of properly appealing section 2-1401 petitions is
> of particular importance where a petitioner has filed successive
> section 2-1401 petitions for relief instead of making timely appeals
> to attack prior judgments or orders. *The supreme court's decisions*
> *in Deckard v. Joiner, 44 Ill. 2d 412, 418-19[, 255 N.E.2d 900, 903-*
> *04] (1970), and its progeny have steadily held that repeated*
> *postjudgment motions of this nature are prohibited, as they unnec-*
> *essarily frustrate the policy of bringing finality to court proceed-*
> *ings.* [Citations.] In accord with this rule, Illinois courts have re-
> peatedly held that the filing of multiple postjudgment petitions

- 10 -

does not extend the time for appealing earlier judgments from which the supplemental postjudgment petitions seek relief. [Citations.] The courts' aversion to allowing additional section 2-1401 petitions is heightened where those petitions call on courts to entertain matters that were previously adjudicated or that could have been raised earlier in the proceedings. [Citations.]" (Emphasis added.) *Id.* at 39-40, 693 N.E.2d at 1245.

¶ 39 We note that in *People v. Walker*, 395 Ill. App. 3d 860, 868, 918 N.E.2d 1260, 1267 (2009), the Second District disagreed with *Buschelman*, writing as follows:

"The [*Buschelman*] reasoning *** is puzzling. The *Deckard* court explicitly noted that it was considering the propriety of more than one ordinary postjudgment motion—that neither of the filings in question was under the predecessor to section 2-1401. *Deckard*, 44 Ill. 2d at 418-19[, 255 N.E.2d at 903-04]. The *Deckard* court merely held that a second postjudgment motion does not delay the time for an original appeal. *Deckard*, 44 Ill. 2d at 419[, 255 N.E.2d at 904]."

The *Walker* court ultimately rejected the notion that a trial court lacks jurisdiction to consider more than one section 2-1401 petition. *Id.* at 869-70, 918 N.E.2d at 1268.

¶ 40 Although we agree with *Walker* that a party is not limited *jurisdictionally* to one section 2-1401 petition, the policy underpinning the *Deckard* court's analysis as discussed in *Buschelman*—that is, that successive section 2-1401 petitions unnecessarily frustrate the policy of bringing finality to trial court proceedings—remains entirely correct and applicable to the

facts of this case. In support of this conclusion, we note the Seventh Circuit's decision in *Empress Casino Joliet Corp. v. Blagojevich*, 638 F.3d 519, 538 (7th Cir. 2011), where the court wrote that "[section] 2-1401 decisions have res judicata effect on *successive* [section] 2-1401 petitions, *not* on entirely new actions filed against different parties." (Emphases in original.) The Seventh Circuit further cited approvingly the *Buschelman* court's observation that the Illinois Supreme Court's decisions in *Deckard* and its progeny have steadily held that repeated section 2-1401 petitions are prohibited because they " 'unnecessarily frustrate the policy of bringing finality to court proceedings.' " *Id*. (quoting *Buschelman*, 296 Ill. App. 3d at 39, 639 N.E.2d at 1245). The Seventh Circuit further noted that "[t]he reason for this rule is obvious: It cuts down on the waste of judicial resources by preventing litigants from plying courts with the same losing arguments again and again." *Id*.

¶ 41    Since defendant's conviction almost 18 years ago, it is readily apparent that he is unhappy with his lot in life—serving a lengthy prison sentence for merely brutally murdering his estranged wife—and, as a result, has chosen to file numerous pleadings in futile and frivolous attempts to escape the consequences of this heinous murder. On this record, we have every reason to believe that defendant's ongoing abuse of the judicial system will continue because the normal disincentives that affect the general public, be they economic, professional, or social, do not apply to defendant. Simply put, defendant has nothing to lose by continuing to burden the courts with his frivolous pleadings. The judiciary cannot permit this squandering of scarce judicial resources to continue unabated. Indeed, we note that the trial court is already keenly aware of defendant's history, as shown by the court's order barring the filing of any subsequent pleadings from defendant until he first obtains leave of court.

¶ 42     Under the circumstances presented in this case, we reject defendant's argument that the supreme court's decision in *Laugharn* prohibits a trial court from immediately considering a *successive* section 2-1401 petition that (1) does not comport with the requirements outlined in section 2-1401 of the Code or (2) raises claims the court has previously considered and rejected or could have been raised in the initial section 2-1401 pleading.  As we have previously noted, the 30-day rule announced in *Laugharn* was intended to allow a party sufficient time to respond to a section 2-1401 petition instead of empowering a prisoner to persist in filing frivolous claims.  The supreme court in *Laugharn* was not dealing with a *successive* section 2-1401 petition, and we do not believe that the supreme court would limit a trial court's authority on handling such petitions, especially, as here, when they are clearly frivolous.  Moreover, to proceed as defendant urges would not only be inconsistent with the court's "traditional right of discretionary control over its own docket" (*Grillo v. Yeager Construction*, 387 Ill. App. 3d 577, 603, 900 N.E.2d 1249, 1274 (2008)), but also the public policy component of conserving limited judicial resources and time (*City of Rockford v. Unit Six of the Policemen's Benevolent & Protective Ass'n of Illinois*, 362 Ill. App. 3d 556, 566, 840 N.E.2d 1283, 1292 (2005)).

¶ 43     If we were to hold otherwise, defendant could file *successive* section 2-1401 petitions weekly, and the trial court would be burdened with keeping track of which bogus petition had been filed more than 30 days earlier, so it could *sua sponte* dismiss it with prejudice.  Or the court could shift that obligation to the already overburdened State's Attorney's office to determine when and how to address these spurious pleadings.  Such a result would be unconscionable, and we will have no part in imposing such requirements.

¶ 44     Last, we note that the two issues raised in this consolidated appeal represent the defendant's fifth and sixth appeals before this court.  Without some consequence for his repeated

- 13 -

frivolous filings, it is clear that defendant will continue to burden the trial and appellate courts with his bogus pleadings. "Accordingly, we order defendant to show cause within 30 days why sanctions should not be entered against him under Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) for filing a frivolous appeal. Until such time as (1) defendant responds to this order and (2) this court determines what action to take, we direct the clerk of this court to disregard—and by that we mean to not file—any new appeals submitted to this court by defendant." *Alexander*, 2014 IL App (4th) 130132, ¶ 59, 23 N.E.3d 621; see also *People v. Austin*, 2014 IL App (4th) 140408, ¶ 26, 23 N.E.3d 615; *Williams v. Commissary Department of the Department of Corrections,* 407 Ill. App. 3d 1135, 1138, 948 N.E.2d 1061, 1063 (2011).

¶ 45                                    III. CONCLUSION

¶ 46            For the reasons stated, we affirm the trial court's judgment.

¶ 47            Affirmed.