2026 IL App (4th) 250803

NO. 4-25-0803

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 14, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| MICHAEL P. CRENSHAW, | ) | No. 00CF727 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott Paccagnini, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court, with opinion.

Justices Knecht and Grischow concurred in the judgment and opinion.

**OPINION**

¶ 1        In March 2001, defendant, Michael P. Crenshaw, entered an open guilty plea to the charge of first degree murder (720 ILCS 5/9-1(a)(1) (West 2000)), and the trial court sentenced him to 50 years in prison.

¶ 2        Defendant appealed, arguing that his sentence was unreasonably disparate to that of his codefendant, who received a 30-year sentence. The Second District disagreed and affirmed defendant's sentence. *People v. Crenshaw*, 341 Ill. App. 3d 1118 (2003) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 3        Over the last 20 years, defendant has repeatedly filed postconviction petitions and other various collateral attacks regarding his conviction and sentence. The trial courts and the appellate court have rejected each of defendant's attacks.

¶ 4 The present case is merely the latest in his long line of groundless attacks. In June 2025, defendant filed 10 distinct motions for leave to file a successive postconviction petition. These 10 distinct motions constituted defendant's 24th through his 33rd collateral filings.

¶ 5 In July 2025, the trial court entered an order denying defendant's request for leave to file his 10 successive postconviction petitions, noting that the court found defendant's claims were "frivolous as he has either raised or could have raised each of his claims in prior proceedings. Therefore, [defendant] has failed to make the requisite showing of either cause and prejudice, or actual innocence, that is necessary to allow for successive postconviction proceedings."

¶ 6 Defendant appealed, and the Office of the State Appellate Defender (OSAD) was appointed to represent him. In January 2026, OSAD filed a motion to withdraw as counsel on appeal because "an appeal in this case would be without arguable merit." OSAD also filed a memorandum of law in support of that motion, which set forth (1) a full statement of facts, (2) a list of potential issues on appeal, and (3) the reasons why each of those potential issues does not merit review.

¶ 7 OSAD mailed a copy of the motion to defendant, and he has filed a written objection.

¶ 8 For the reasons that follow, we grant OSAD's motion to withdraw, affirm defendant's conviction and sentence, and impose a sanction of $20,000 upon defendant, pursuant to Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994), for his filing this frivolous appeal.

¶ 9 I. BACKGROUND

¶ 10 A. The Trial Court Proceedings

¶ 11 In March 2001, defendant entered an open plea of guilty to the charge of the first degree murder of Bobby Joe Craig. Prior to the plea, defendant's counsel withdrew previously

filed motions to suppress statements and physical evidence, explaining to the trial court that counsel believed there existed "no basis to suppress the statements or to suppress the evidence."

¶ 12    In September 2007, the Second District affirmed the trial court's judgment dismissing defendant's postconviction petition, and in that order, the Second District wrote the following regarding the factual basis for defendant's 2001 guilty plea:

> "According to the factual basis presented in support of the plea, defendant was involved in a relationship with Bobby Joe Craig's wife, Theresa Craig. Theresa and defendant decided to kill Bobby Joe so that they could continue their relationship without Bobby Joe's interference. On March 16, 2000, Theresa brought Bobby Joe to a secluded wooded area where defendant attacked Bobby Joe from behind, first stabbing him in the back of the head and then slitting his throat. Defendant and Theresa each gave written statements to the police that explained their respective roles in the murder. The statements included the location of the knife used in the murder and defendant's bloody clothes. DNA tests revealed that the blood on defendant's clothes was Bobby Joe's. Defendant also wrote a letter from jail in which he admitted to killing Bobby Joe because Bobby Joe would not give Theresa a divorce and Theresa wanted Bobby Joe dead." See *People v. Crenshaw*, No. 2-05-0687 (2007) (unpublished order under Illinois Supreme Court Rule 23).

¶ 13                    B. Defendant's Direct Appeal

¶ 14    On direct appeal, defendant argued that his sentence was unreasonably disparate to that of his codefendant, Theresa Craig, who received a 30-year sentence. The appellate court

disagreed and affirmed. See *Crenshaw*, 341 Ill. App. 3d 1118 (2003) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 15                    C. Defendant's Initial Postconviction Petition

¶ 16        In June 2004, defendant filed a *pro se* petition for postconviction relief, alleging, among other things, that trial counsel was ineffective for withdrawing the motions to suppress and advising defendant to plead guilty. The trial court appointed postconviction counsel to represent defendant, and the State filed a motion to dismiss the petition. The court conducted a hearing on that motion and granted it, concluding that trial counsel was not ineffective because the decision not to pursue the motions to suppress was strategic.

¶ 17        Defendant appealed that ruling, and the Second District affirmed. *People v. Crenshaw*, No. 2-05-0687 (2007) (unpublished order under Illinois Supreme Court Rule 23).

¶ 18                    D. Other Collateral Attacks Filed by Defendant

¶ 19        Consistent with OSAD's duty to this court when filing a motion to withdraw, OSAD commendably and professionally reviewed all of the subsequent collateral filings defendant has made attacking his conviction and sentence and has set forth all of these filings—23 in total—in an organized and comprehensive fashion in OSAD's memorandum of law in support of its motion to withdraw. Because we conclude that OSAD's listing of these collateral filings is entirely accurate, as well as understandable, we choose to simply set forth OSAD's list in this opinion, but in a somewhat edited fashion so as to not make this opinion unduly lengthy.

> "*Second collateral filing*—[In February 2014, defendant] filed a request for leave to file a petition for post-conviction relief, alleging that his confession was procured through fraud, he acted under duress when he was told that the death penalty was on the table, and he was induced to plead guilty through prosecutorial

misconduct and his counsel's ineffectiveness. [In May] 2014, the trial court denied leave to file. [Defendant] appealed [but later voluntarily dismissed his appeal].

*Third collateral filing*—[In February 2014, defendant] filed a request for leave to file a petition for relief from judgment, asserting that his confession was false and procured through fraud, and he acted under duress when he was told that the death penalty was on the table. \*\*\* [In October 2014], the trial court dismissed the petition as untimely and [found the judgment was] not void.

*Fourth collateral filing*—[In June 2014, defendant] filed a petition for state *habeas corpus* in the Illinois Supreme Court, raising lack of jurisdiction because he was not properly arraigned on the original complaint when the State's Attorney lacked the power to do so, there was no probable cause finding for later complaints, and 'dereliction of counsel.' This petition was denied [in September 2014].

*Fifth collateral filing*—[In July 2015, defendant] filed a motion for leave to file successive post-conviction relief petition, asserting as cause that his plea counsel failed to comply with [Illinois Supreme Court] Rule 604(d) [(eff. Dec. 11, 2014)] when he did not file a motion to withdraw plea after he was asked to file one, and as prejudice that he was on psychotropic medication at the time of his plea and his counsel did not inform the court.

He also filed a *pro se* successive post-conviction relief petition raising [several claims]. \*\*\*

[In September 2015], the trial court denied leave to file for failure to demonstrate cause. On appeal, OSAD's motion to withdraw pursuant to *Pennsylvania v. Finley*[, 481 U.S. 551 (1987)] was granted [in August 2017].

*Sixth collateral filing*—[In January 2017, defendant] filed a motion for leave to file a successive post-conviction petition, asserting as cause that the information raised in his petition was not previously available to him. In his successive petition he asserted that the trial court relied on an improper sentencing factor that the offense was committed in a brutal and heinous fashion, when that factor was inherent in the offense. The State filed a motion to impose sanctions along with its motion to dismiss. [In September 2017], the trial court denied leave to file and *noted that it would not hesitate to file sanctions on further filings.* [(Emphasis added.)]

*Seventh collateral filing*—[In July 2017, defendant] filed a motion to withdraw guilty plea and vacate sentence asserting that [(1)] his trial counsel was ineffective for [a variety of reasons and (2)] his plea was involuntary because he was on psychotropic medication and having an adverse reaction to it at the time of his plea.

[In September 2017], the trial court found that the motion to withdraw was untimely and the court lacked jurisdiction to consider it. [Defendant] appealed from both this motion to withdraw plea and his previous motion for leave to file, but later dismissed the appeal.

*Eighth collateral filing*—[In January 2018, defendant] filed a motion to withdraw guilty plea and vacate sentence, asserting that his counsel waived his right to a speedy trial and he was on anti-psychotic medication. [In January] 2018, the trial court found that it lacked jurisdiction to address the untimely motion to withdraw plea and vacate sentence.

*Ninth collateral filing*—[In March 2018, defendant] filed a motion to dismiss [the] charge of first degree murder, asserting that he did not receive a timely preliminary examination or an indictment within thirty days of the date he was taken into custody. [In July 2018], this motion was heard and denied. On appeal the denial was affirmed, *with the Appellate Court declining to impose sanctions*. [(Emphasis added.)]

*Tenth collateral filing*—[In April 2018, defendant] filed a petition for writ of *mandamus* in the Illinois Supreme Court ***. The Attorney General's Office filed a motion to dismiss this petition, which was granted [in May] 2018.

*Eleventh collateral filing*—[In September 2018, defendant] filed a petition for *mandamus* arguing that the truth-in-sentencing statute was unconstitutional when the legislature amended the statute before the Illinois Supreme Court had ruled on the previous version. This petition was denied [in May] 2019.

*Twelfth collateral filing*—[In April 2019, defendant] filed a petition for certificate of innocence alleging that he was on psychotropic medications at the time of his plea[.] [He also alleged various technical violations of his rights.]

*Thirteenth collateral filing*—[In June 2019, defendant] filed an injunction relief petition and/or motion to reduce sentence, arguing that his conviction violated double jeopardy ***.

*Fourteenth collateral filing*—[In November 2019, defendant] filed a motion for disposition or rule on an irregular judgment, arguing that his confession was involuntary [and] his speedy trial and double jeopardy rights were violated ***.

[In February] 2020, the State filed a combined motion to dismiss the latest

three filings (12th, 13th, and 14th) and to impose sanctions. [In June] 2020, the State's motion to dismiss the three pleadings and impose sanctions was granted. [Defendant] filed a late notice of appeal and [in November] 2020, OSAD's motion for late notice of appeal was denied because OSAD could not affirm that the appeal had merit ***.

*[In January] 2021, when the mandate returned the matter to the trial court, the court sua sponte vacated the previously imposed sanctions.* [(Emphasis added.)]

*Fifteenth collateral filing*—[In November 2020, defendant] filed a petition for *habeas corpus*, asking to invoke plain error for his claims of ineffective assistance of counsel and a void *ab initio* sentencing order ***.

[In December] 2020, he filed a motion to supplement the record for petition of *habeas corpus*, listing his [various] claims[.] ***

[In April] 2021, the State responded with a motion to deny *habeas* and seek sanctions. At a hearing [in May] 2021, the trial court denied the *habeas* petition. Sanctions were imposed, but the court told [defendant] that they would be lifted if he filed a pleading averring that he would stop filing frivolous pleadings. [In May 2021, defendant] filed a *pro se* motion to discontinue filing frivolous petitions and to avoid sanctions. However, he continued to file pleadings and [in June] 2021, an order reimposing sanctions of $475 was entered.

[Defendant] appealed, but dismissed the appeal [in October] 2021, and the sanctions were reinstated.

*Sixteenth collateral filing*—[In December 2021, defendant] filed a *pro se* motion for leave to file under actual innocence, which he claimed was his last

attempt to appeal. ***

[In February] 2022, this motion was denied for failure to 'make the requisite showing of either cause and prejudice or actual innocence necessary to allow for successive post-conviction proceedings.' [Defendant] appealed, and his motion to dismiss a[p]peal was granted [in] September *** 2022.

*Seventeenth collateral filing*—[In March 2022, defendant] filed a motion for order *nunc pro tunc* challenging his term of [mandatory supervised release]. [In March] 2022, the State responded with a motion to dismiss and impose sanctions. [In June] 2022, the trial court held a hearing on the motion and found the motion frivolous, ordering [defendant] to pay the filing fee of $40 and $504 for the State's fees to respond to his motion.

*Eighteenth collateral filing*—[In August 2022, defendant] filed a *pro se* motion for successive post-conviction petition under newly discovered evidence to raise [an actual] innocence claim[.] ***

[In October 2022, defendant] filed a motion to withdraw this motion for leave for file.

*Nineteenth collateral filing*—[In November 2022, defendant] filed a *pro se* motion for *nunc pro tunc* requesting resentencing, asserting that his sentence was void because he was sentenced under the incorrect statute, and was supposed to be sentenced to death.

[In December] 2022, the State filed a motion to dismiss and seek sanctions. When [defendant] responded to the State's motion, he raised eight new claims. [In February] 2023, the trial court held a hearing and struck [defendant's] response and

eight new claims. The court denied the request for order *nunc pro tunc* and resentencing. [Defendant] was assessed filing fees and the State's attorney's fees of $168, and *ordered not to file any future pleadings without seeking leave of court*. [(Emphasis added.)]

*Twentieth collateral filing*—[In March 2023, defendant] filed a *pro se* motion for successive post-conviction petition under newly discovered evidence of ineffective assistance of counsel[.] \*\*\*

[In March] 2023, the trial court reviewed the motion for leave to file and dismissed it because it was filed in violation of the court's previous order to receive permission prior to filing motions. *The circuit clerk was instructed not to receive future filings from [defendant]*. [(Emphasis added.)]

*Twenty-first collateral filing*—[In July 2024, defendant] filed a motion for leave to file a petition for *habeas corpus* based on his actual innocence, and that he was 'intellectually disabled' \*\*\*. \*\*\*

*Twenty-second collateral filing*—Also [in July 2024, defendant] filed a motion for leave to file petition of *mandamus*, which argued the state did not have subject matter or personal jurisdiction over him, since only the Attorney General could prosecute him.

*Twenty-third collateral filing*—[In July 2024, defendant] additionally filed a motion to withdraw an involuntary guilty plea, asserting that he was forced to plead guilty to avoid the death penalty, he was illegally seized because there was no probable cause and there were no exigent circumstances, and he was not given *Miranda* warnings prior to being taken to jail.

[In December] 2024, the trial court held a hearing on the petition for *mandamus*, motion to withdraw his guilty plea, and the petition for *habeas corpus*. Court found all were frivolous and denied the motions for leave to file. [Defendant] appealed and [in June] 2025, his motion to dismiss appeal was allowed."

¶ 20                                    E. This Appeal

¶ 21                      1. *Defendant's Most Recent Collateral Attack*

¶ 22          In June 2025, defendant filed 10 distinct motions for leave to file a successive postconviction petition, constituting his 24th through his 33rd collateral filings. Those filings included claims—yet again—of actual innocence; of discovery violations; of errors by trial and appellate counsel; of the unconstitutionality of a statute, under which defendant was prosecuted; of erroneous prosecution by the state's attorney, instead of the attorney general; of a void judgment of his conviction; and of other, similar groundless and repeated allegations.

¶ 23                    2. *The Trial Court's Order Denying Defendant's Motions*

¶ 24          In July 2025, the trial court entered an order denying defendant's request for leave to file his numerous successive postconviction petitions, noting that the court found defendant's claims were "frivolous as he has either raised or could have raised each of his claims in prior proceedings. Therefore, [defendant] has failed to make the requisite showing of either cause and prejudice, or actual innocence, that is necessary to allow for successive postconviction proceedings."

¶ 25                    3. *The Current Appeal and OSAD's Motion To Withdraw*

¶ 26          Defendant appealed the trial court's order, and OSAD was appointed to represent him. In January 2026, OSAD filed a motion to withdraw as counsel on appeal on the ground that "an appeal in this case would be without arguable merit." OSAD also filed a memorandum of law

in support of the motion that set forth a full statement of facts, a list of potential issues on appeal, and the reasons why those issues do not merit review.

¶ 27    OSAD sent a copy of her motion to withdraw and the accompanying memorandum of law to defendant. A week later, defendant filed his objection to OSAD's motion.

¶ 28                    II. ANALYSIS

¶ 29                    A. This Case

¶ 30    We agree with OSAD that "an appeal in this case would be without arguable merit," and we thank OSAD for its thoughtful and comprehensive memorandum in support of its motion to withdraw. Our usual practice before granting an appellate attorney's motion to withdraw would be to discuss the merits of why that counsel thought an appeal in that case would be "without arguable merit." However, we decline to do so in this case because (1) OSAD's motion is obviously appropriate and (2) defendant's outrageous abuse of the judicial process compels us to stop wasting our time on his repeated nonsense.

¶ 31    Consistent with this court's responsibility for dealing with an appellate counsel's motion to withdraw, as this court explained in *People v. White*, 2020 IL App (4th) 160793, ¶¶ 42-57, we grant OSAD's motion to withdraw and affirm the trial court's judgment.

¶ 32                    B. Sanctions for Defendant's Abuse of the Judicial System

¶ 33    For several years, this court has found it necessary to address cases in which convicted criminals have abused the judicial system by repeatedly filing groundless and frivolous claims, both at the trial level and before the appellate court. In response to such abuse, this court has imposed sanctions and urged trial courts to do so, as well.

¶ 34    An example is this court's opinion in *People v. Harper*, 2019 IL App (4th) 180160, ¶¶ 18-20, in which we wrote the following:

"Since defendant's conviction in 2002, he has filed in the trial court numerous petitions, motions, and other miscellaneous pleadings—no matter how repetitive or futile—in an attempt to evade the consequences of killing his wife. Neither the trial court nor this court has ever found that any of defendant's claims contained any merit. Defendant's continuing abuse of the court system has squandered judicial resources that could have been better spent addressing claims filed by good-faith litigants. Without some consequence for defendant's habitual frivolous filings, we believe his abuse of the trial and appellate courts will continue. Accordingly, this court has decided to take the following actions.

First, because we conclude that defendant's motion for DNA testing is frivolous, we remind the trial court of its statutory authority to collect funds from defendant's trust fund account to pay for the costs of this litigation. See 735 ILCS 5/22-105(a) (West 2016) ('If a prisoner confined in an Illinois Department of Corrections facility files a pleading *** and the Court makes a specific finding that the pleading *** filed by the prisoner is frivolous, the prisoner is responsible for the full payment of filing fees and actual court costs.'); see also *People v. Austin*, 2014 IL App (4th) 140408, ¶ 25, 23 N.E.3d 615.

Second, as we have done in the past with other 'frequent filers,' 'we order defendant to show cause within 30 days why sanctions should not be entered against him under Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) for filing a frivolous appeal. Until such time as (1) defendant responds to this order and (2) this court determines what action to take, we direct the clerk of this court to disregard—

- 13 -

and by that we mean to not file—any new appeals submitted to this court by defendant.' *People v. Alexander*, 2014 IL App (4th) 130132, ¶ 59, 23 N.E.3d 621."

¶ 35  Because of the outrageous abuse of the judicial system by defendant in this case, we find it necessary to repeat what we have previously written about actions trial courts and the appellate court can take to both stop and punish "frequent filers" who repeatedly file frivolous claims. Taking such punitive action might deter frivolous filings by others.

¶ 36  1. *Sanctions That Trial Courts Can Impose*

¶ 37  This court has previously written extensively about the various tools available to both the trial court and appellate court to deter abusive repeated "frequent filers," including (1) revocation of sentence credit, (2) the payment of filing fees and court costs, and (3) additional monetary sanctions.

¶ 38  a. Revocation of Sentence Credit

¶ 39  In *People v. Moore*, 2023 IL App (4th) 210245, ¶¶ 58-64, this court wrote the following, which we now reiterate:

"The courts of this state may take measures 'to restrain litigants from maintaining vexatious litigation.' [*Austin*, 2014 IL App (4th) 140408,] ¶ 24 (citing *People v. Ryburn*, 378 Ill. App. 3d 972, 977, 884 N.E.2d 1178, 1182 (2008)). To that end, Illinois law provides various tools for circuit and appellate courts to employ to deter frivolous filings, such as the payment of fees and costs, revocation of sentencing credit, and imposition of monetary sanctions.

a. Revocation of Sentence Credit—730 ILCS 5/3-6-3(d)

Section 3-6-3(d) of the Unified Code of Corrections (730 ILCS 5/3-6-3(d) (West 2020)) authorizes [the Illinois Department of Corrections

- 14 -

[(DOC)] to revoke sentence credit when a prisoner has filed a frivolous lawsuit against the State, DOC, the prisoner review board (PRB), or any of their officers or employees. A 'lawsuit' is defined as (1) a motion pursuant to section 116-3 of the Code of Criminal Procedure of 1963 (Code of Criminal Procedure) (725 ILCS 5/116-3 (West 2020)), (2) a *habeas corpus* petition under article X of the Code of Criminal Procedure (735 ILCS 5/art. X (West 2020)) (or federal law (28 U.S.C. § 2254 (2018))), (3) a petition under the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 2020)), (4) an action under the federal Civil Rights Act (42 U.S.C. § 1983 (2018)), (5) a second or subsequent petition under the [Post-Conviction Hearing] Act, or (6) a second or subsequent petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2020)). 730 ILCS 5/3-6-3(d)(2) (West 2020).

A 'lawsuit' is 'frivolous' if it meets any of the following conditions:

'([1]) it lacks an arguable basis either in law or in fact;

([2]) it is being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

([3]) the claims, defenses, and other legal contentions therein are not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

([4]) the allegations and other factual contentions do not have evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; or

- 15 -

([5]) the denials of factual contentions are not warranted on the evidence, or if specifically so identified, are not reasonably based on a lack of information or belief.' *Id.* § 3-6-3(d)(1).

If the court makes a specific finding that a filing is frivolous, section 3-6-3(d) requires that DOC '*shall* conduct a hearing to revoke up to 180 days of sentence credit' by bringing charges against the defendant before the PRB. (Emphasis added.) *Id.* § 3-6-3(d)."

¶ 40                                        b. Payment of Filing Fees and Court Costs

¶ 41        In *Moore*, this court also wrote about another action trial courts could take, explaining as follows:

"Section 22-105(a) of the Code of Civil Procedure (735 ILCS 5/22-105(a) (West 2020)), is a corollary to section 3-6-3(d) of the Unified Code of Corrections that imposes responsibility for the payment of filing[ ] fees and court costs upon a prisoner who files a frivolous lawsuit against the State, DOC, PRB, or any of their officers or employees. The section applies when (1) a prisoner has filed a pleading, motion, or 'other filing' seeking relief under (a) the [Post-Conviction Hearing] Act [(Act)], (b) section 116-3 of the Code of Criminal Procedure, (c) article X of the Code of Civil Procedure (as a *habeas corpus* proceeding), (d) the Court of Claims Act, or (e) a second or subsequent petition for relief from judgment under section 2-1401 of the Code of Civil Procedure and (2) the circuit court has made a specific finding that the filing is frivolous. *Id.* (We note that, unlike section 3-6-3(d) of the Unified Code of Corrections, section 22-105 of the

Code of Civil Procedure does not limit its applicability to a second or subsequent postconviction petition.)

The definition of 'frivolous' in section 22-105 is identical to that in section 3-6-3(d)(1), set forth above [citation]. 735 ILCS 5/22-105(b) (West 2020).

When a court has made a specific finding that a filing is frivolous, section 22-105 sets forth specific procedures for the assessment and collection of the filing fees and court costs from the prisoner's existing trust account. *Id.* § 22-105(a).

Notably, section 122-4 of the Act specifically provides that a prisoner who files a pleading, motion, or other document under the Act that is determined to be frivolous 'shall not proceed as a poor person and shall be liable for the full payment of filing fees and actual court costs as provided in [section 22-105(a)] of the Code of Civil Procedure.' 725 ILCS 5/122-4 (West 2020)." *Id.* ¶¶ 65-68.

¶ 42 In *People v. Taylor*, 2022 IL App (4th) 210748-U, ¶ 46, this court also addressed section 22-105(a) of the Code of Civil Procedure (735 ILCS 5/22-105(a) (West 2020)) and wrote the following:

"[S]ection 105(a) of the Code of Civil Procedure (735 ILCS 5/22-105(a) (West 2020)) [contains the following provision]:

'If a prisoner confined in an Illinois Department of Corrections facility files a pleading, motion, or other filing *** seeking post-conviction relief under [the Act] *** against the State *** and the Court makes a specific finding that the pleading, motion or other filing which purports to be a legal document filed by the prisoner is frivolous, the prisoner is responsible for the full payment of filing fees and actual court costs.'

As discussed above, defendant's petition was frivolous and patently without merit. The court made a specific finding in its written order finding defendant's petition frivolous. Therefore, the court did not err where the filing fees '*shall not* be waived.' (Emphasis added.) See 705 ILCS 105/27.9(a) (West 2020). In addition, the court is authorized by statute to collect filing fees from a prisoner's trust fund account. 735 ILCS 5/22-105(a) (West 2020)."

¶ 43            c. Additional Monetary Sanctions Under Rule 137

¶ 44        In *Moore*, this court discussed additional monetary sanctions a trial court could impose under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018), as follows:

"Illinois Supreme Court Rule 137(a) (eff. Jan. 1, 2018) confers broad authority upon trial courts to sanction attorneys or parties who violate the rule, which states as follows:

'The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.'

Upon finding a violation of the rule, the trial court is authorized to impose an 'appropriate sanction.' *Id.* Like Rule 375(b), Rule 137(a) does not define an 'appropriate sanction' but offers as an example payment to the other party of

- 18 -

reasonable expenses incurred due to the improper filing. See Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994); R. 137(a) (eff. Jan. 1, 2018).

Although Rule 137 is applicable to civil cases, it is also applicable to proceedings initiated under the Act. *People v. Bowman*, 335 Ill. App. 3d 1142, 1155, 782 N.E.2d 333, 344 (2002); see *People v. Greer*, 212 Ill. 2d 192, 205, 817 N.E.2d 511, 520 (2004) ('[T]he mere filing of an amended [postconviction] petition by counsel [who has determined the claims are meritless] would appear to violate the proscriptions of *** Rule 137 [citation].').'" *Moore*, 2023 IL App (4th) 210245, ¶¶ 70-72.

¶ 45    d. The Absence of Sanctions Imposed by the Trial Court in This Case

¶ 46    For 20 years, this defendant has engaged in an outrageous abuse of the judicial system by his filing of dozens of frivolous petitions and motions in the Winnebago County circuit court. Yet, in July 2025, when the trial court denied his request for leave to file his 24th through 33rd spurious pleadings, the trial court imposed no sanctions of any kind upon defendant for his continued unacceptable behavior and abuse of the judicial system.

¶ 47    We note that over the years, the trial court *purported* to impose financial sanctions upon defendant for his bogus filings, but it is not clear from the record whether any of those sanctions were ever paid by defendant, and we frankly doubt that they were. Indeed, on at least one occasion (for reasons that do not appear in the record), the trial court seemingly *sua sponte* vacated the financial sanctions against defendant.

¶ 48    Illinois courts must protect the integrity and efficiency of the judicial system from the misconduct of "frequent filers" like this defendant by imposing sanctions that will provide a strong disincentive for continuing misconduct like this defendant's. The situation in Illinois is in

contrast to that of the federal courts, as shown by the opinion by the Seventh Circuit Court of Appeals in *In re City of Chicago*, 500 F.3d 582 (7th Cir. 2007). In that case, the Seventh Circuit noted that Prince Foryoh had filed many frivolous civil suits, and, after losing them, failed to pay the costs awarded against him. *Id.* at 583. The Seventh Circuit noted that "[j]udicial patience has limits" and entered an order in which it wrote, in part, the following:

> "IT IS ORDERED that the clerks of all federal courts in this circuit are directed to return unfiled any papers submitted either directly or indirectly by or on behalf of Prince Foryoh in this or any of his pending cases in this court or district courts unless and until he pays in full all fees and costs from all of his federal suits." *Id.* at 583-84.

¶ 49　The Illinois Appellate Court does not have the authority exercised by the Seventh Circuit Court of Appeals in the above case to direct clerks of the circuit courts not to accept papers filed by abusive litigants. Our authority in that regard is limited to giving directions to the clerk of this court. But, as we earlier explained, Illinois circuit courts possess the power to punish litigants who are abusing the court system, and we again call upon trial courts to do so. Permitting abusive "frequent filers" like this defendant to continue his terrible misconduct without any consequences being imposed brings the Illinois judiciary into disrepute and squanders precious public resources.

¶ 50　　　　　　　　　　2. *Sanctions That Appellate Courts Can Impose*

¶ 51　In *Moore*, 2023 IL App (4th) 210245, ¶¶ 75-80, this court wrote the following regarding sanctions the appellate court can impose, which we now reiterate:

> "Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) authorizes the appellate court to impose monetary sanctions for appeals or other actions in the

appellate court that are frivolous or not taken in good faith. The rule reads as follows:

'If, after consideration of an appeal or other action pursued in a reviewing court, it is determined that the appeal or other action itself is *frivolous*, or that an appeal or other action was not taken in good faith, for an improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, or the manner of prosecuting or defending the appeal or other action is for such purpose, *an appropriate sanction may be imposed upon any party* or the attorney or attorneys of the party or parties.' (Emphases added.) *Id.*

The rule defines 'frivolous' as 'not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law.' *Id.*

\*\*\*

We have every reason to believe defendant's ongoing abuse of the judicial system will continue. As we explained in *People v. Donley*, 2015 IL App (4th) 130223 ¶ 41, 29 N.E.3d 683, 'the normal disincentives that affect the general public, be they economic, professional, or social, do not apply to defendant. Simply put, defendant has nothing to lose by continuing to burden the courts with his frivolous pleadings.'

That same sentiment this court expressed in *Donely* applies here. Because the judiciary cannot allow the 'squandering of scarce judicial resources to continue

- 21 -

unabated' (*id.*), if defendant continues to waste state resources, it will come at his cost.

Accordingly, we conclude that (1) defendant's filing of his amended motion to file a third successive postconviction petition was frivolous, (2) the trial court properly denied defendant leave to file a successive postconviction petition, and (3) defendant's appeal of the trial court's decision was also frivolous because it was neither reasonably well-grounded in fact nor warranted by existing law." (Emphases in original.)

¶ 52        In *Moore*, this court took the usual action, before imposing any sanctions under Rule 375(b), of ordering the defendant to show cause within 30 days why sanctions should not be entered against him for his filing of the frivolous appeal in that case. *Id.* ¶ 81. We added that "[u]ntil such time as (1) defendant responds to this order and (2) this court determines what action to take, we direct the clerk of this court to disregard—and by that we mean to not file—any new appeals submitted to this court by defendant." *Id.* However, that usual first step is unnecessary in this case because this defendant could not possibly show cause for his decades-long, ongoing abuse of the judicial system by his filing of utterly groundless and frivolous motions and petitions.

¶ 53        Further, we note that defendant's misconduct has continued unabated, despite his familiarity with Rule 375(b). That familiarity is shown by his response to OSAD's January 2026 motion to withdraw as counsel on appeal in this case. OSAD mailed a copy of that motion to defendant and advised him that he would be given an opportunity to respond to the motion and raise in this court any issues he deemed reviewable in his case.

¶ 54        In response to OSAD's motion, defendant, in February 2026, filed an objection to OSAD's motion to withdraw from the case. Interestingly, defendant attached to his objection the

two-and-a-half-page letter he was sent by OSAD, explaining in detail why it was unable to identify any meritorious issues in defendant's appeal. In that letter, OSAD also wrote the following:

"As this appeal is from the denial of your 24th-33rd post-conviction filings, there is a very real risk that the Appellate Court will find that this is a frivolous appeal raising repetitive issues. Since you are serving this offense at 100% under truth-in-sentencing, the Court cannot use 730 ILCS 5/3-6-3(d)(2) to revoke up to 180 days of good conduct credit for the frivolous filing of a second or subsequent petition for post-conviction relief. However, the Court can require that you pay filing fees for this petition and can order that the fees be taken from your commissary account.

The Court also can require you to show cause within 30 days why sanctions should not be entered against you under Illinois Supreme Court Rule 375(b) for the filing of a frivolous appeal. In the past, such fines have been up to $500. The Court can also refuse to accept any future appeals from you until you have paid the filing fees and any fines imposed."

¶ 55　　　　Regrettably, this court has seen too many examples of "frequent filers" who abuse the judicial system and who have been unwisely permitted by the courts to get away with it. But that will no longer happen with regard to this defendant.

¶ 56　　　　Rule 375(b) speaks of actions that are frivolous or not taken in good faith, but those terms fail to adequately describe the manifest abuse of the judicial system that this defendant has engaged in for two decades, including the current petitions that are the subject of this appeal. Accordingly, on this court's own motion, we impose a sanction upon defendant of $20,000, to be paid to the clerk of the Appellate Court, Fourth District. We direct the clerk of this court to

- 23 -

disregard—and by that we mean to not file—any new appeals submitted to this court by defendant until such time as this sanction has been paid.

¶ 57                    3. *Squandering the Limited Resources of OSAD*

¶ 58        This court has written in the past about how frivolous and groundless pleadings from "frequent filers" like this defendant squander scarce judicial resources. *Moore*, 2023 IL App (4th) 210245, ¶ 79; *Donley*, 2015 IL App (4th) 130223, ¶ 41. But it is not only the courts who are required to squander scarce resources because of the misconduct of "frequent filers"; OSAD is similarly victimized.

¶ 59        This case shows why. OSAD's motion to withdraw—and its accompanying memorandum in support of that motion—is 38 pages long. We earlier quoted at length from that memorandum and thanked counsel for her "commendably and professionally" reviewing all of the subsequent collateral filings by this defendant over the last two decades. *Supra* ¶ 19.

¶ 60        We hate to think how many hours of scrutinizing the extensive record in these cases counsel was required to devote to this task, but it is clear that all of counsel's efforts were squandered, if not wasted, on an underserving task.

¶ 61        That is because this appeal is utterly without merit, and all those hours resulted in squandering the limited resources of OSAD.

¶ 62        Because OSAD handles the vast majority of appeals in criminal cases before this court, we know from long experience that OSAD does a fine job representing indigents in criminal cases. However, like the courts, OSAD cannot afford to squander its limited resources, which is what happened in this case. Thus, punishing "frequent filers" by imposing severe sanctions is necessary and entirely appropriate to protect not only the courts, but also OSAD, which has served us so well.

¶ 63                        III. CONCLUSION

¶ 64        For the reasons stated, we grant OSAD's motion to withdraw, affirm defendant's

conviction and sentence, and impose a sanction of $20,000 upon defendant, pursuant to Illinois

Supreme Court Rule 375(b) (eff. Feb. 1, 1994), for the filing of this frivolous appeal.

¶ 65        Affirmed.

*People v. Crenshaw*, 2026 IL App (4th) 250803

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 00-CF-727; the Hon. Scott Paccagnini, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Susan M. Wilham, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | No brief filed for appellee. |